# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| MOBILE TECH., INC. d/b/a MOBILE TECHNOLOGIES INC. and MTI,<br><br>    Plaintiff,<br><br>  vs.<br><br>INVUE SECURITY PRODUCTS INC.,<br><br>    Defendant. | CASE NO. 3:18-cv-00052-FDW-DSC<br><br>**ANSWER AND COUNTERCLAIM TO THE FIRST AMENDED COMPLAINT**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## INVUE SECURITY PRODUCTS, INC.'S ANSWER AND COUNTERCLAIM TO THE FIRST AMENDED COMPLAINT

Defendant InVue Security Products, Inc. ("InVue" or "Defendant"), by and through its attorneys, submits the following Answer and Counterclaim to the First Amended Complaint ("Complaint") filed by Mobile Tech., Inc. d/b/a Mobile Technologies Inc. and MTI ("Plaintiffs" or "MTI").

As information for the Court, InVue notes that Plaintiff MTI is presently a defendant in multiple actions pending in the United States District Court for the District of Oregon, each of which asserts MTI's infringement of one or more InVue patents.

InVue denies each and every allegation of the Complaint unless expressly admitted and provides the following responses to the numbered paragraphs of the Complaint.

## NATURE OF THE ACTION

1.  InVue denies paragraph 1 of the Complaint.

2.  InVue denies paragraph 2 of the Complaint.

3.  InVue denies paragraph 3 of the Complaint.

4.  InVue denies paragraph 4 of the Complaint.

5.  InVue denies paragraph 5 of the Complaint.

## PARTIES

6.  Based upon information and belief, InVue admits paragraph 6 of the Complaint.

7.  Answering paragraph 7 of the Complaint, InVue admits only that it is an Ohio Corporation with a corporate office in Charlotte, North Carolina. InVue otherwise denies the remaining allegations of Paragraph 5 of the Complaint.

8.  Answering Paragraph 8, the Court has subject matter jurisdiction over actions arising under the United States Patent Act, 35 U.S.C. § 100 *et seq*. and certain actions arising under Title 15 of the United States Code. However, InVue denies the legal sufficiency of Plaintiff's claims, denies that InVue has infringed

2

Plaintiff's patents, and denies that Plaintiff has any cause of action against InVue arising under the Lanham Act or California or North Carolina state law.

9.      Answering Paragraph 9 of the Complaint, InVue admits that this Court has personal jurisdiction over InVue for the present action.  InVue otherwise denies the allegations of Paragraph 9 of the Complaint.

10.     Answering Paragraph 10 of the Complaint, InVue admits that its principal place of business falls within this District and that venue is proper for the Plaintiff's purported patent infringement claim under 28 U.S.C. § 1400(b).  InVue otherwise denies the allegations of Paragraph 10 of the Complaint.

11.     Answering paragraph 11 of the Complaint, InVue admits that it resides within the District, that this Court has personal jurisdiction over InVue for the present action and that venue over Plaintiff's purported claim of unfair competition under 28 U.S.C. § 1391(b)(1) is proper.  InVue otherwise denies the allegations of Paragraph 11 of the Complaint.

12.     Answering paragraph 12 of the Complaint, InVue admits that Plaintiff has produced mobile device display and merchandising security products that are used by customers to provide retail security for consumer electronics on display in retail stores.  InVue otherwise denies the allegations of Paragraph 12 of the Complaint.

13.     InVue denies paragraph 13 of the Complaint.

3

14.     Answering paragraph 14 of the Complaint, InVue admits that Exhibit A to the Complaint purports to be a true and accurate copy of U.S. Pat. No. 9,786,140 (the '140 patent or "patent-in-suit").  InVue otherwise denies the allegations of Paragraph 14 of the Complaint.

15.     InVue denies paragraph 15 of the Complaint.

16.     Paragraph 16 of the Complaint purports to set forth the text of claim 26 of the '140 Patent.  InVue otherwise denies paragraph 16 of the Complaint.

17.     Answering paragraph 17 of the Complaint, InVue is without knowledge or information sufficient to form a belief as to whether Plaintiff is the owner of the '140 patent and, therefore, denies the same.  InVue also denies the remaining allegations of Paragraph 17 of the Complaint.

18.     Answering paragraph 18 of the Complaint, InVue admits that Exhibit B to the Complaint purports to be a true and accurate copy of U.S. Pat. No. 10,026,281 (the '281 patent or "patent-in-suit"). InVue otherwise denies the allegations of Paragraph 18 of the Complaint.

19.     InVue denies paragraph 19 of the Complaint.

20.     Answering Paragraph 20 of the Complaint, InVue admits only that paragraph 20 purports to set forth the text of claim 1 of the '281 patent.  InVue otherwise denies the allegations of paragraph 20 of the Complaint.

21.     Answering paragraph 21 of the Complaint, InVue is without knowledge or information sufficient to form a belief as to whether Plaintiff is the owner of the '281 patent and, therefore, denies the same. InVue also denies the remaining allegations of Paragraph 21 of the Complaint.

22.     Answering paragraph 22 of the Complaint, InVue admits only that before the '140 Patent issued, and for some products, before the application for the '140 patent was even filed, InVue was already making and/or selling non-infringing products that may be referred to as Series 1060 and Series 1560.  InVue denies the remaining allegations of Paragraph 22 of the Complaint.

23.     Answering paragraph 23 of the Complaint, InVue denies that it manufactures, offers to sell, sells, uses, or imports and product or method covered by the '140 patent.  InVue also denies that any of its activities alleged in the Complaint require the permission or authority of Plaintiff.  InVue denies any remaining allegations of Paragraph 23.

24.     Answering paragraph 24 of the Complaint, InVue admits only that one of its products may be referenced as the POD Series 1060 and that Paragraph 24 purports to contain an image that includes such product.  InVue otherwise denies the allegations of Paragraph 24 of the Complaint.

25.     InVue denies paragraph 25 of the Complaint.

26.     Answering paragraph 26 of the Complaint, InVue admits only that one of its products may be referenced as the POD Series 1560 and that Paragraph 26 purports to contain an image that includes such product.  InVue otherwise denies the allegations of Paragraph 26 of the Complaint.

27.     InVue denies paragraph 27 of the Complaint.

28.     Answering paragraph 28 of the Complaint, InVue admits only that before the application for the '281 patent published and, for some products, before the application for the '281 patent was even filed, InVue was making and/or selling non-infringing products that may be referred to as Series 1060, 1560, 960, 1050, and OnePOD One40, One55, One60, and One65.  InVue denies the remaining allegations of paragraph 28 of the Complaint.

29.     InVue denies paragraph 29 of the Complaint.

30.     Answering paragraph 30 of the Complaint, InVue denies that it manufactures, offers to sell, sells, uses, or imports any product or method covered by the '281 patent.  InVue also denies that any of its activities alleged in the Complaint require the permission or authority of Plaintiff.  InVue denies any remaining allegations of Paragraph 30.

31.     Answering paragraph 31 of the Complaint, InVue admits only that one of its products may be referenced as the Series 1060 and that Paragraph 31

purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 31 of the Complaint.

32. InVue denies paragraph 32 of the Complaint.

33. Answering paragraph 33 of the Complaint, InVue admits only that one of its products may be referenced as the Series 1560 and that Paragraph 33 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 33 of the Complaint.

34. InVue denies paragraph 34 of the Complaint.

35. Answering paragraph 35 of the Complaint, InVue admits only that one of its products may be referenced as the Series 960 and that Paragraph 35 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 35 of the Complaint.

36. InVue denies paragraph 36 of the Complaint.

37. Answering paragraph 37 of the Complaint, InVue admits only that one of its products may be referenced as the Series 1050 and that Paragraph 37 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 37 of the Complaint.

38. InVue denies paragraph 38 of the Complaint.

39. Answering Paragraph 39 of the Complaint, InVue admits only that one of its products may be referenced as the OnePOD One 40 and that Paragraph

39 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 39 of the Complaint.

40. InVue denies Paragraph 40 of the Complaint,

41. Answering Paragraph 41 of the Complaint, InVue admits only that one of its products may be referenced as the OnePOD One 55 and that Paragraph 41 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 41 of the Complaint.

42. InVue denies paragraph 42 of the Complaint.

43. Answering Paragraph 43 of the Complaint, InVue admits only that one of its products may be referenced as the OnePOD One 60 and that Paragraph 43 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 43 of the Complaint.

44. InVue denies paragraph 44 of the Complaint.

45. Answering Paragraph 45 of the Complaint, InVue admits only that one of its products may be referenced as the OnePOD One 65 and that Paragraph 45 purports to contain an image that includes such product. InVue otherwise denies the allegations of Paragraph 45 of the Complaint.

46. InVue denies paragraph 46 of the Complaint.

47. InVue denies paragraph 47 of the Complaint.

48.     Answering Paragraph 48 of the Complaint, InVue admits that on April 11, 2018, officers of Plaintiff and InVue met in person (the "April Meeting) for purposes of discussing settlement of litigation between the parties—not for purposes that Plaintiff now uses to make allegations in its Complaint.  InVue further admits that while Plaintiff indicated it had at least one patent application pending and provided an incomplete set of claims from an application, Plaintiff did not specifically identify any particular patent application or provide a copy thereof. InVue otherwise denies the allegations of paragraph 48 of the Complaint.

49.     Answering Paragraph 49 of the Complaint, InVue admits that Plaintiff provided a copy of an incomplete set of claims from an unspecified application, that InVue demonstrated a prototype of a OnePOD product, that Plaintiff asserted the OnePOD product would infringe such claim if it ever issued in a patent, that InVue later explained why OnePOD could not infringe such claim even if it issued in a patent, and that Plaintiff was unable to provide any substantive response to InVue's explanation.  InVue otherwise denies the allegations of paragraph 49 of the Complaint.

50.     Answering Paragraph 50 of the Complaint, InVue admits only that Plaintiff and InVue exchanged emails wherein InVue further explained why InVue's products could not infringe Plaintiff's claim and, indeed as further alleged herein, InVue does infringe the subsequently issued '281 Patent for at least such

9

reasons.   InVue otherwise denies the allegations of paragraph 50 of the Complaint.

51.    Answering Paragraph 51 of the Complaint, InVue admits only that at least one employee became aware of U.S. Application Number 15/826,017 at some point before the '281 Patent issued. InVue otherwise denies the allegations of paragraph 51 of the Complaint.

52.    Answering Paragraph 52 of the Complaint, InVue admits that Exhibit C to the Complaint purports to be a true and accurate copy of U.S. Patent Application Publication 2018/0144593.  InVue otherwise denies the allegations of paragraph 52 of the Complaint.

53.    InVue denies paragraph 53 of the Complaint.

54.    Answering Paragraph 54 of the Complaint, InVue admits that there are differences between claim 1 of the '593 Publication and claim 1 of the '281 patent.  InVue otherwise denies the allegations of paragraph 54 of the Complaint.

55.    InVue denies paragraph 55 of the Complaint.

56.    Answering paragraph 56 of the Complaint, InVue admits that at least one employee became aware of the '593 Publication at some point before the filing of the Complaint.  InVue otherwise denies the allegations of paragraph 56 of the Complaint.

57.     Answering paragraph 57 of the Complaint, InVue admits only that Plaintiff and InVue are competitors, and InVue otherwise denies paragraph 57 of the Complaint.

58.     InVue denies paragraph 58 of the Complaint.

59.     Answering Paragraph 59 of the Complaint, InVue admits only that a video regarding the testing of both InVue and competitor products was present on InVue's website, that such video included at least one of Plaintiff's products, and that testing of Plaintiff's product demonstrated inferiority in comparison to an InVue product.  InVue otherwise denies the allegations of Paragraph 59 of the Complaint.

60.     Answering Paragraph 60 of the Complaint, InVue admits only that the Complaint purports to set forth an image of a Freedom Micro.  InVue otherwise denies the allegations of Paragraph 60 of the Complaint.

61.     Answering Paragraph 61 of the Complaint, InVue admits only that a video regarding the testing of both InVue and various competitor products was present on InVue's website, that such video included at least one of Plaintiff's products, and that testing of Plaintiff's product demonstrated inferiority in comparison to an InVue product.  InVue otherwise denies the allegations of Paragraph 61 of the Complaint.

62.     Answering Paragraph 62 of the Complaint, InVue admits only that a video regarding the testing of both InVue and various competitor products was present on InVue's website, that such video included at least one of Plaintiff's products, that testing of Plaintiff's product revealed its inferiority in comparison to an InVue product, and that Plaintiff has deliberately cropped and enlarged images from the video that are included in paragraph 62.  InVue otherwise denies the allegations of Paragraph 62 of the Complaint.

63.     Answering Paragraph 63 of the Complaint, InVue admits only that one viewing the video would recognize that different products are presented during testing shown in the video and that Plaintiff has deliberately cropped, enlarged, and annotated images from the video that are included in paragraph 63.  InVue otherwise denies the allegations of Paragraph 63 of the Complaint.

64.     Answering Paragraph 64 of the Complaint, InVue admits only that one viewing the video would recognize that different products are presented during testing shown in the video and that Plaintiff has deliberately cropped, enlarged, and annotated images from the video that are included in paragraph 64.  InVue otherwise denies the allegations of Paragraph 64 of the Complaint.

65.     Answering Paragraph 65 of the Complaint, InVue admits only that one viewing the video would recognize that different products are presented during testing shown in the video and that Plaintiff has deliberately cropped, enlarged, and

12

annotated images from the video that are included in paragraph 65. InVue otherwise denies the allegations of Paragraph 65 of the Complaint.

66. Answering Paragraph 66 of the Complaint, InVue admits only that one viewing the video would recognize that different products are presented during testing shown in the video and that Plaintiff has deliberately cropped and enlarged images from the video that are included in paragraph 66. InVue otherwise denies the allegations of Paragraph 66 of the Complaint.

67. Answering Paragraph 67 of the Complaint, InVue admits only that a video regarding the testing of both InVue and various competitor products was present on InVue's website, that such video included at least one of Plaintiff's products, and that testing of Plaintiff's product revealed its inferiority in comparison to an InVue product. InVue otherwise denies the allegations of Paragraph 67 of the Complaint.

68. InVue denies paragraph 68 of the Complaint.

69. InVue denies paragraph 69 of the Complaint.

70. InVue denies paragraph 70 of the Complaint.

71. InVue denies paragraph 71 of the Complaint.

72. Answering paragraph 72 of the Complaint, InVue is without knowledge or information sufficient to form a belief as to whether Plaintiff uses

the names "MTI," "Mobile Tech," and "Mobile Technologies" to refer to the business it conducts and, therefore, denies the same.

73.    Answering paragraph 73 of the Complaint, InVue is without knowledge or information sufficient to form a belief as to whether Plaintiff has invested significant time, effort, and resources to the development and promotion of its business and the purported MTI Marks throughout the United States and, therefore, denies the same.

74.    InVue denies paragraph 74 of the Complaint.

75.    InVue denies paragraph 75 of the Complaint.

76.    InVue denies paragraph 76 of the Complaint.

77.    Answering paragraph 77 of the Complaint, InVue admits that it has placed advertisements on Google.  In further response to the allegations of this paragraph, InVue admits only that, in response to Plaintiff's purchase of advertising on Google.com which improperly included or used one or more of InVue's trademarks, InVue selected certain Google advertising keywords, including "Mobile Technologies Inc" and "Mobile Tech Inc."  InVue otherwise denies the allegations of Paragraph 77 of the Complaint.

78.    InVue denies paragraph 78 of the Complaint because as of the filing of the Complaint, no such Google search results were returned.

79.     InVue denies paragraph 79 of the Complaint because as of the filing of the Complaint, no such Google search results were returned.

80.     InVue denies paragraph 80 of the Complaint because as of the filing of the Complaint, no such Google search results or ad were returned.

81.     InVue denies paragraph 81 of the Complaint because as of the filing of the Complaint, no such Google search results or ad were returned.

82.     InVue denies paragraph 82 of the Complaint.

83.     InVue denies paragraph 83 of the Complaint.

84.     InVue denies paragraph 84 of the Complaint.

85.     InVue denies paragraph 85 of the Complaint.

86.     Answering paragraph 86 of the Complaint, InVue is without knowledge or information sufficient to form a belief as to allegations of Paragraph 86 and, therefore, denies the same.

87.     Answering paragraph 87 of the Complaint, InVue admits only that it advertised with Google at least as early as October 2018.  InVue otherwise denies the allegations of paragraph 87 of the Complaint.

88.     InVue denies paragraph 88 of the Complaint.

89.     InVue denies paragraph 89 of the Complaint.

90.     Answering paragraph 90 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 89.

91.     InVue denies paragraph 91 of the Complaint.

92.     InVue denies paragraph 92 of the Complaint.

93.     InVue denies paragraph 93 of the Complaint.

94.     InVue denies paragraph 94 of the Complaint.

95.     InVue denies paragraph 95 of the Complaint.

96.     Answering paragraph 96 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 95.

97.     Answering paragraph 97 of the Complaint, InVue admits only that it was aware of the '140 patent when the Complaint was filed on November 27, 2018 and otherwise denies the allegations of paragraph 97.

98.     InVue denies paragraph 98 of the Complaint.

99.     InVue denies paragraph 99 of the Complaint.

100.    InVue denies paragraph 100 of the Complaint.

101.    InVue denies paragraph 101 of the Complaint.

102.    InVue denies paragraph 102 of the Complaint.

103.    InVue denies paragraph 103 of the Complaint.

104.    InVue denies paragraph 104 of the Complaint.

105.    InVue denies paragraph 105 of the Complaint.

106.    InVue denies paragraph 106 of the Complaint.

107.    InVue denies paragraph 107 of the Complaint.

108.    InVue denies paragraph 108 of the Complaint.

109.    Answering paragraph 109 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 108.

110.    Answering paragraph 110 of the Complaint, InVue admits only that it was aware of the '140 patent when the Complaint was filed on November 27, 2018 and otherwise denies the allegations of paragraph 110.

111.    InVue denies paragraph 111 of the Complaint.

112.    InVue denies paragraph 112 of the Complaint.

113.    InVue denies paragraph 113 of the Complaint.

114.    InVue denies paragraph 114 of the Complaint.

115.    InVue denies paragraph 115 of the Complaint.

116.    InVue denies paragraph 116 of the Complaint.

117.    InVue denies paragraph 117 of the Complaint.

118.    InVue denies paragraph 118 of the Complaint.

119.    InVue denies paragraph 119 of the Complaint.

120.    InVue denies paragraph 120 of the Complaint.

121.    Answering Paragraph 121 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 120.

122.    Answering Paragraph 122 of the Complaint, InVue admits only that at some time before issuance of the '281 patent, at least one employee became aware

17

at some point of U.S. Application No. 15/826,017. InVue otherwise denies the allegations of Paragraph 122 of the Complaint.

123. Answering Paragraph 123 of the Complaint, InVue admits only that it was aware of the '281 patent when the Complaint was filed on November 27, 2018 and otherwise denies the allegations of paragraph 123.

124. InVue denies Paragraph 124 of the Complaint.

125. InVue denies Paragraph 125 of the Complaint.

126. InVue denies Paragraph 126 of the Complaint.

127. InVue denies Paragraph 127 of the Complaint.

128. InVue denies Paragraph 128 of the Complaint.

129. InVue denies Paragraph 129 of the Complaint.

130. Answering Paragraph 130 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 129.

131. Answering Paragraph 131 of the Complaint, InVue admits only that at some point before issuance of the '281 patent, at least one employee became aware of U.S. Application No. 15/826,017. InVue otherwise denies the allegations of Paragraph 131 of the Complaint.

132. Answering Paragraph 132 of the Complaint, InVue admits only that it was aware of the '281 patent when the Complaint was filed on November 27, 2018 and otherwise denies the allegations of paragraph 132.

18

133. InVue denies Paragraph 133 of the Complaint.

134. InVue denies Paragraph 134 of the Complaint.

135. InVue denies Paragraph 135 of the Complaint.

136. InVue denies Paragraph 136 of the Complaint.

137. InVue denies Paragraph 137 of the Complaint.

138. InVue denies Paragraph 138 of the Complaint.

139. InVue denies Paragraph 139 of the Complaint.

140. InVue denies Paragraph 140 of the Complaint.

141. InVue denies Paragraph 141 of the Complaint.

142. InVue denies Paragraph 142 of the Complaint.

143. InVue denies Paragraph 143 of the Complaint.

144. Answering Paragraph 144 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 143.

145. Answering Paragraph 145 of the Complaint, InVue admits only that at some point before issuance of the '281 patent, at least one employee became aware of U.S. Application No. 15/826,017. InVue otherwise denies the allegations of Paragraph 145 of the Complaint.

146. Answering Paragraph 146 of the Complaint, InVue admits only that it was aware of the '281 patent when the Complaint was filed on November 27, 2018 and otherwise denies the allegations of paragraph 146.

19

147. InVue denies Paragraph 147 of the Complaint.

148. InVue denies Paragraph 148 of the Complaint.

149. InVue denies Paragraph 149 of the Complaint.

150. InVue denies Paragraph 150 of the Complaint.

151. InVue denies Paragraph 151 of the Complaint.

152. InVue denies Paragraph 152 of the Complaint.

153. InVue denies Paragraph 153 of the Complaint.

154. InVue denies Paragraph 154 of the Complaint.

155. InVue denies Paragraph 155 of the Complaint.

156. InVue denies Paragraph 156 of the Complaint.

157. InVue denies Paragraph 157 of the Complaint.

158. Answering Paragraph 158 of the Complaint, InVue refers to and
incorporates herein its responses set forth above in Paragraphs 1 through 157.

159. Answering paragraph 159 of the Complaint, InVue admits only that
Exhibit C indicates a publication date of May 24, 2018 and otherwise denies
paragraph 159 of the Complaint.

160. InVue denies Paragraph 160 of the Complaint.

161. Answering Paragraph 161 of the Complaint, InVue admits only that at
some point before issuance of the '281 patent, at least one employee became aware

of U.S. Application No. 15/826,017. InVue otherwise denies the allegations of Paragraph 161 of the Complaint.

162. InVue denies Paragraph 162 of the Complaint.

163. InVue denies Paragraph 163 of the Complaint.

164. InVue denies Paragraph 164 of the Complaint.

165. InVue denies Paragraph 165 of the Complaint.

166. Answering paragraph 166 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 165.

167. InVue denies paragraph 167 of the Complaint.

168. InVue denies paragraph 168 of the Complaint.

169. InVue lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 169 of the Complaint and, therefore, denies the same.

170. InVue lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 170 of the Complaint and, therefore, denies the same.

171. InVue denies paragraph 171 of the Complaint.

172. InVue denies paragraph 172 of the Complaint.

173. InVue denies paragraph 173 of the Complaint.

174. InVue denies paragraph 174 of the Complaint.

175. InVue denies paragraph 175 of the Complaint.

176. Answering paragraph 176 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 175.

177. InVue denies paragraph 177 of the Complaint.

178. InVue denies paragraph 178 of the Complaint.

179. InVue denies paragraph 179 of the Complaint.

180. InVue denies paragraph 180 of the Complaint.

181. InVue denies paragraph 181 of the Complaint.

182. InVue denies paragraph 182 of the Complaint.

183. InVue denies paragraph 183 of the Complaint.

184. Answering paragraph 184 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 183.

185. InVue denies paragraph 185 of the Complaint.

186. InVue denies paragraph 186 of the Complaint.

187. InVue denies paragraph 187 of the Complaint.

188. InVue denies paragraph 188 of the Complaint.

189. InVue denies paragraph 189 of the Complaint.

190. InVue denies paragraph 190 of the Complaint.

191. Answering paragraph 191 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 190.

192.   InVue denies paragraph 192 of the Complaint.

193.   InVue denies paragraph 193 of the Complaint.

194.   Answering paragraph 194 of the Complaint, InVue admits that Plaintiff purports to seek an injunction against InVue but denies that Plaintiff is entitled to such an injunction.  InVue denies the remaining allegation of paragraph 194 of the Complaint.

195.   Answering paragraph 195 of the Complaint, InVue refers to and incorporates herein its responses set forth above in Paragraphs 1 through 194.

196.   InVue denies paragraph 196 of the Complaint.

197.   InVue denies paragraph 197 of the Complaint.

198.   Answering paragraph 198 of the Complaint, InVue admits that Plaintiff purports to seek an injunction against InVue but denies that Plaintiff is entitled to such an injunction.  InVue denies the remaining allegation of paragraph 198 of the Complaint.


## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

InVue denies that Plaintiff is entitled to the relief it requested or any other relief.  To the extent that Plaintiff avers or makes allegations in its prayer for relief or elsewhere that are not specifically addressed herein, any such averment or allegation is denied.

## ADDITIONAL DEFENSES

### FIRST DEFENSE
### (Non-infringement of the '140 Patent)

1. Pursuant to 35 U.S.C. § 282, InVue has not infringed, and is not infringing, either literally or under the doctrine of equivalents, directly or indirectly, any valid claim of the '140 patent. At a minimum, InVue does not infringe for at least the following reasons:

(a) One or more of InVue's POD Series 1060 and POD Series 1560 do not meet the limitation of having "a fiber optic cable."

(b) One or more of InVue's POD Series 1060 and POD Series 1560 do not meet the limitation of having "a connector."

(c) One or more of InVue's POD Series 1060 and POD Series 1560 do not meet the limitation of having voltage adaption.

(d) One or more of InVue's products use a multi-conductor retractor cable, which Plaintiff disavowed.

(e) The '140 patent is invalid, and an invalid patent cannot be infringed.

### SECOND DEFENSE
### (Non-infringement of the '281 Patent)

2. Pursuant to 35 U.S.C. § 282, InVue has not infringed, and is not infringing, either literally or under the doctrine of equivalents, directly or

24

indirectly, any valid claim of the '281 patent. At a minimum, InVue does not infringe for at least the following reasons:

(a) One or more of InVue's products use a multi-conductor retractor cable, which Plaintiff disavowed.

(b) The '281 patent is invalid, and an invalid patent cannot be infringed.

## THIRD DEFENSE
### (Invalidity of the '140 Patent)

3.     The claims of the '140 patent are invalid pursuant to 35 U.S.C. §§ 102, 103, 112 (first paragraph) and/or 112 (second paragraph).  In particular, at a minimum, the '140 patent is invalid for the following reasons:

(a)     The limitation "optical signal" lacks proper written description support and is not enabled by the specification of the '140 patent.

(b)     Each and every claim of the '140 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following: the Freedom LP3 product that was on sale, sold, in public use, or otherwise available to the public before the effective filing date of the claimed invention and/or more than a year prior to the effective filing date of the claimed invention; MTI's 2009 Virtual Store Tour Video that was publicly available before the effective filing date of the claimed invention and/or more than a year prior to the date of the application for the '140 patent in the United States; one or more printed publications describing the Freedom LP3 before the effective filing date of the claimed invention and/or more than a year prior to

25

the date of the application for the '140 patent in the United States;  WO

2011/045058 to Logokett (also published as DE 10 2009 049 738); and U.S. Patent

No. 7,327,276 to Deconinck.

## FOURTH DEFENSE
### (Invalidity of the '281 Patent)

4.     The claims of the '281 patent are invalid pursuant to 35 U.S.C. §§ 102

and/or 103 for at least the following reasons:

(a)     The Freedom LP3 product that was on sale, sold, in public use, or

otherwise available to the public before the correct effective filing date of the

claimed invention and/or more than a year prior to the correct effective filing date

of the claimed invention;

(b)     MTI's 2009 Virtual Store Tour Video that was publicly available

before the correct effective filing date of the claimed invention and/or more than a

year prior to the correct effective filing date of the claimed invention;

(c)     One or more printed publications describing the Freedom LP3 were

publicly available before the correct effective filing date of the claimed invention

and/or more than a year prior to the correct effective filing date of the claimed

invention;

(d)     WO 2011/045058 to Logokett (also published as DE 10 2009 049

738);

(e)     U.S. Patent No. 7,327,276 to Deconinck; and/or

26

(f)     the '281 patent contains new subject matter that is not entitled to claim priority to U.S. Application No. 12/351,837.

## FIFTH DEFENSE
### (No Damages)

5.     To the extent Plaintiff and its alleged predecessors in interest to the '140 patent and/or '281 patent failed to properly mark any of their relevant products as required by 35 U.S.C. § 287, or otherwise give proper notice that InVue's actions allegedly infringed the '140 patent and/or '281 patent, InVue is not liable to Plaintiff for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the '140 patent and/or '281 patent.

## SIXTH DEFENSE
### (Inequitable Conduct – '140 Patent)

6.     Plaintiff's allegations of infringement are barred because the '140 patent is unenforceable pursuant to 37 C.F.R. § 1.56, the doctrine of inequitable conduct, the doctrine of infectious unenforceability, and/or MTI's employee inventors' and MTI's patent attorneys' deliberate decision to withhold and/or mispresent material information from the United States Patent and Trademark Office (PTO) during the prosecution of the applications that resulted in the issuance of the '140 patent and/or the prosecution of the applications to which the '140 patent claims priority, as set forth in paragraphs 1 through 376 and 407 through 475 of InVue's Counterclaims herein, which InVue hereby incorporates by

27

reference and alleges in this defense.

## SEVENTH DEFENSE
### (Inequitable Conduct – '281 Patent)

7.      Plaintiff's claims for infringement are barred because the '281 patent

is unenforceable pursuant to 37 C.F.R. 1.56, the doctrine of inequitable conduct,

the doctrine of infectious unenforceability, and/or MTI's employee inventors' and

MTI's patent attorneys deliberate decision to withhold and/or mispresent material

information from the United States Patent and Trademark Office (PTO) during the

prosecution of the applications that resulted in the issuance of the '281 patent

and/or the prosecution of the applications to which the '281 patent claimed priority

and claims priority, as set forth in paragraphs 1 through 376 and 407 through 475

of InVue's Counterclaims herein, which InVue hereby incorporates by reference

and alleges in this defense.

## EIGHTH DEFENSE
### (Unclean Hands)

8.      Because Plaintiff comes to the Court with unclean hands for at least

the reasons set forth in Paragraphs 1 through 376 and 407 through 475 of InVue's

Counterclaims herein, which InVue incorporates by reference and alleges in this

defense, Plaintiff is not entitled to recover damages or obtain the equitable relief it

requests with regard to the '140 patent and/or the '281 patent and its Complaint

should be dismissed with prejudice.

28

## NINTH DEFENSE
### (Failure to State a Claim)

9.    Plaintiff's Complaint, and each of the purported claims for relief therein, fails to state a claim upon which relief can be granted.

## TENTH DEFENSE
### (Laches)

10.    The doctrine of laches bars Plaintiff's claims, in that Plaintiff has unreasonably delayed in the enforcement of its rights, if any, despite its full awareness of Defendant's alleged actions.

## ELEVENTH DEFENSE
### (Estoppel)

11.    One or more causes of action in the Complaint are barred by the doctrine of estoppel.

## TWELTH DEFENSE
### (Waiver)

12.    One or more causes of action in the Complaint are barred by the doctrine of waiver.

## THIRTEENTH DEFENSE
### (Adequate Remedy at Law)

13.    The injunctive relief sought in the Complaint is barred because the injury or damage allegedly suffered by Plaintiff, if any, would be adequately compensated in an action at law for damages and therefore Plaintiff is not entitled to seek equitable relief.

## FOURTEENTH DEFENSE
### (No Irreparable Harm)

14.     Plaintiff is not entitled to injunctive relief as it has not and will not

suffer irreparable harm based on acts attributable to InVue.

## FIFTEENTH DEFENSE
### (Preemption of State Law Unfair Competition Claims)

15.     The state law claims for Unfair Competition are preempted by federal

legislation pursuant to the "*Sears-Compco* decisions" Defense to a State-Based

Claim.  *See Sears, Roebuck & Co. v. Stiffel Co*., 376 U.S. 225, 11 L. Ed. 2d 661, 84

S. Ct. 784, 140 U.S.P.Q. 524 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*,

376 U.S. 234, 11 L. Ed. 2d 669, 84 S. Ct. 779, 140 U.S.P.Q. 528 (1964).

## SIXTEENTH DEFENSE
### (No Unlawful, Unfair, or Fraudulent Conduct)

16.     The state law claims for Unfair Competition are barred in whole or in

part because the alleged business practices are not unlawful, unfair, fraudulent, or

deceptive within the meaning of California Business & Professions Code § 17200,

North Carolina General Statute § 75-1.1, or otherwise.

## SEVENTEENTH DEFENSE
### (No Damages Under California Business & Professions Code § 17200, et seq.)

17.     The state law claim for Unfair Competition is barred in whole or in

part because any monetary damages under California Business and Professions

30

Code §17200, *et seq.*, are barred in their entirety by those statutes and other applicable legal authority.

## EIGHTEENTH DEFENSE
### (Statute of Limitations)

18.    One or more causes of action in the Complaint are barred by the applicable statute of limitations.

## NINETEENTH DEFENSE
### (Extraterritoriality)

19.    Plaintiff's claims are barred in whole or in part, because California state laws, including the California Unfair Competition Law and California False Advertising Law, do not apply to conduct occurring outside California and involving an out-of-state plaintiff.

## TWENTIETH DEFENSE
### (Due Process)

20.    Any finding of liability under California or North Carolina state law, including the California Unfair Competition Law, California False Advertising Law, or North Carolina § 75-1.1, would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and of various state constitutions, because the standards of liability under these statutes are unduly vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest, and cannot be applied to alleged injuries occurring outside of California or North Carolina.

31

## TWENTY-FIRST DEFENSE
### (Dormant Commerce Clause)

21.     Any injunction based upon under California or North Carolina state
law, including the California Unfair Competition Law, California False
Advertising Law, or North Carolina § 75-1.1, and applied extraterritorially would
violate the Dormant Commerce Clause to the United States Constitution because
such an injunction would have the effect of burdening interstate commerce without
any legitimate state interest in such extraterritorial regulation to outweigh such
burden.

## TWENTY-SECOND DEFENSE
### (Anti-SLAPP)

22.     Plaintiff's state law claims arise, in whole or in part, from
Defendant's exercise of its right of free speech, or its acts in furtherance of that
right, in connection with an issue of public interest, and thus fall within the scope
of California Code of Civil Procedure § 425.16.  Because Plaintiff cannot present
competent and admissible evidence establishing a probability that it will prevail on
its causes of action, each cause of action must be stricken pursuant to § 425.16.

## TWENTY-THIRD DEFENSE
### (Generic or Merely Descriptive Marks / Non-Protectable Designations)

21.     One or more of Plaintiff's alleged trademarks are generic or are
merely descriptive of the goods or services upon which they are used; and have not

acquired distinctiveness and lack secondary meaning. Therefore, Plaintiff's alleged trademarks are not protectable or enforceable as trademarks.

22. Plaintiff's claims of common law infringement fail because Plaintiff's alleged trademarks consist of words that, by themselves or together, are not sufficiently distinctive to warrant trademark protection.

### TWENTY-FOURTH DEFENSE
### (Fair Use)

23. Plaintiff's claims are barred, in whole or in part, by the doctrines of fair use, nominative fair use and/or descriptive fair use.

### TWENTY-FIFTH DEFENSE
### (Non-Infringement)

24. Plaintiff's claims are barred in whole or in part on the basis that Defendant has not infringed any applicable trademarks under federal or state law.

### TWENTY-SIXTH DEFENSE
### (Estoppel by Conduct)

25. While Plaintiff alleges that Defendant has engaged in conduct related to "misleading Google advertisements," the evidence will show that Plaintiff has engaged in the same or similar conduct related to Defendant. Such conduct by Plaintiff occurring prior to any alleged wrongful conduct of Defendant. Therefore, Plaintiff it is estopped from pursuing any claims or causes of action thereon.

## TWENTY-SEVENTH DEFENSE
### (Failure to Police and Enforce)

26.     Plaintiff's claims are barred by its failure to enforce its alleged trademarks against others engaged in selling security devices for retail merchandise.


## RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

InVue reserves the right to assert additional affirmative defenses in the event that discovery or further analysis indicates that additional affirmative defenses are appropriate.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, Defendant/Counterclaimant InVue Security Products, Inc. ("InVue" or "Defendant") hereby brings counterclaims against Plaintiff/Counter-defendant Mobile Tech, Inc. ("MTI" or "Plaintiff") for judgment as follows:

## PARTIES

1.      InVue is a corporation formed under the laws of Ohio with a principal place of business at 9201 Baybrook Lane, Charlotte, NC 28277.

2.      By its Complaint, Plaintiff alleges that it is an Indiana corporation having a principal business address at 1050 NE 67th Ave., Hillsboro, OR 97124.

## JURISDICTION AND VENUE

3.      This is an action for declaratory judgment arising under the Patent Act, 35 U.S.C. § 1, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction over this action, including InVue's counterclaims, pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4.      An actual and justiciable controversy exists under the Declaratory Judgment Act between the parties regarding the alleged infringement, invalidity, and unenforceability of the '140 patent and the '281 patent.  More particularly, in its Complaint, Plaintiff alleges infringement by InVue of the '140 patent and the '281 patent which, upon information and belief, are owned by Plaintiff.  An actual

35

and justiciable controversy exists under the Declaratory Judgment Act between the parties regarding certain alleged unfair competition and trade practices claims Plaintiff purports to set forth under federal and state law. This controversy has sufficient immediacy and reality to warrant issuance of a declaratory judgment.

5. An actual and justiciable controversy also exists under the Declaratory Judgment Act between the parties regarding the alleged unenforceability of U.S. Patent Nos. 8,698,617 ('617 patent) and 8,698,618 ('618 patent) – both of which, upon information and belief, are owned by Plaintiff.

6. A true and accurate copy of the '617 patent is attached as Exhibit 1, and a true and accurate copy of the '618 patent is attached as Exhibit 2.

7. The '617 patent, '618 patent, and '140 patent are in the same family and claim priority to one or more of the same applications filed in the United States Patent and Trademark Office (USPTO).

8. The '617 patent, '618 patent, and '140 patent are each entitled "Display for Hand-Held Electronics."

9. The specifications for the '617 patent, '618 patent, and '140 patent are similar and, in some portions, even identical. For example figures 1 through 26 of each of these patents are similar if not identical, the independent claims are similar, and some of the dependent claims are identical.

10. The '617 patent, '618 patent, and '140 patent each include claims

36

expressly directed to, for example, "[a] cable management apparatus for use in mounting one of a plurality of electronic devices to a display." In its Complaint, Plaintiff alleges that InVue is infringing the '140 patent by making, using, offering to sell, selling and/or importing certain cable management apparatuses for mounting an electronic device to a display (*i.e.*, the POD Series 1060 and POD Series 1560). *See, e.g.*, ECF No. 68, Complaint at ¶¶ 22, 27-31.

11.    Plaintiff and InVue are competitors that compete for the sale, *inter alia*, of products including apparatuses for use in mounting electronic devices to displays.

12.    Plaintiff alleges InVue is currently continuing to sell and offer for sale the POD Series 1060 and POD Series 1560. *See, e.g.*, ECF No. 68, Complaint at ¶¶ 24, 26.

13.    InVue's business includes the design, development, marketing, manufacture, import, and/or sale of new products that can be used, for example, in mounting one or more electronic devices to a display.

14.    The relationship and common subject matter between the '140 patent (asserted by Plaintiff in this litigation) and the '617 patent and '618 patent creates a cloud of uncertainty and risks in the marketplace for InVue's current and future business including for apparatuses used in mounting electronic devices to displays.

15.    Plaintiff has not licensed any rights under the '140 patent, '617 patent,

37

or '618 patent to InVue, and Plaintiff has not given InVue a covenant-not-to-sue on the '140 patent, '617 patent, or '618 patent.

16. Plaintiff has already demonstrated its litigiousness with regard to the '618 patent by recently asserting an action for infringement thereof in the United States District Court for the District of Arizona in 2017 against RTF Global, Inc. *See* Exhibit 3, *Mobile Tech, Inc. v. RTF Global, Inc.,* 2:17-cv-00354 (D. Az. 2017). A true and accurate copy of the Complaint filed against RTF Global, Inc. is attached as Exhibit 3.

17. InVue desires to avoid the threat and risk of uncertainty created by the '617 patent and '618 patent and desires to avoid the threat and risk of uncertainty in Plaintiff bringing an action alleging infringement of the '617 patent, the '618 patent, or both.

18. InVue has asserted, and Plaintiff has denied, that the '140 patent, the '617 patent, and '618 patent are unenforceable.

19. The actual and justiciable controversy between the parties regarding the enforceability of the '617 patent and enforceability of the '618 patent is of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

20. This Court has personal jurisdiction over Plaintiff for at least the reasons that Plaintiff has availed itself of this Court through the filing of this action, part of which was subsequently and properly transferred to this Court from

38

the Central District of California (2:17-cv-07491) under 28 U.S.C. § 1404 and part of which was subsequently and properly transferred to this Court from Northern District of Ohio (1:18-cv-01646) under 28 U.S.C. § 1404. Plaintiff purports to set forth claims for infringement of the '140 patent and the '281 patent, both entitled "Display for Hand-held Electronics," as well as related unfair competition and trademark infringement claims, as well as violations of California Business and Professions Code and North Carolina General Statute §75-1.1.

21. Venue in this counterclaim is premised on 28 U.S.C. §§ 1391, 1400 in that Plaintiff filed its own action against InVue in the Central District of California (2:17-cv-07491), which was subsequently and properly transferred under 28 U.S.C. § 1404 to the Western District of North Carolina (3:18-cv-00052). Venue in this counterclaim is also premised on 28 U.S.C. §§ 1391, 1400 in that Plaintiff filed its own action against InVue in the Northern District of Ohio (1:18-cv-01646) and then consented to transfer of such action to the Western District of North Carolina and consolidation with the action already pending in the Western District of North Carolina (3:18-cv-00052).

22. For at least the reasons set forth below, this Court should declare the '617 patent, '618 patent, '140 patent, and the '281 patent unenforceable, deny the relief requested by Plaintiff, and/or dismiss this action with prejudice due to acts and omissions committed in connection with the prosecution of the '617 patent,

39

'618 patent,'140 patent, the '281 patent, and U.S. Application Nos. 14/066,606;

14/092,845; and 12/351,837.

## FACTUAL BACKGROUND
### Merchandising Technologies, Inc. and Plaintiff

23.     Merchandising Technologies, Inc. was incorporated as an Oregon

Corporation.

24.     In May of 2013, in a filing with the Secretary of State for Oregon,

Merchandising Technologies, Inc. identified Chris Remy as its President and

Michael Highland as its Secretary, and indicated having a "Principal Place of

Business" at 1050 NW 229th Avenue, Hillsboro, Oregon, 97124.

25.     In June of 2013, Plaintiff was incorporated in the State of Indiana.  In

July of 2013, Plaintiff filed a Restatement of Articles of Incorporation with the

Secretary of State of Indiana changing its name from "MTI Acquisition, Inc." to

"Mobile Tech, Inc."

26.     In August of 2013, in a filing with the Secretary of State for Oregon,

Merchandising Technologies, Inc. filed Articles of Amendment indicating a name

change to "1050 NW 229th, Inc." and identified Chris Remy as its President, the

same individual who had been previously identified as President of Plaintiff.

27.     In May of 2015, Plaintiff filed an Indiana Business Entity Report

indicating identifying Chris Remy as its Chief Executive Officer and Michael

Highland as its Secretary, the same individuals previously identified as officers of

40

Merchandising Technologies, Inc.

28.    In December of 2015, the entity named as "1050 NW 229th, Inc."
filed Articles of Dissolution and indicated it has been incorporated since October
15, 2004.

29.    In April of 2017, Plaintiff filed an Indiana Business Entity Report
identifying Chris Remy as its Chief Executive Officer and Michael Highland as its
Chief Financial Officer, the same individuals who had previously been identified
as officers of Merchandising Technologies, Inc.

30.    Although not incorporated until June of 2014, by means including at
least its website at http://mobiletechinc.com, Plaintiff has represented to the public,
including its customers and potential customers, that it was founded in 1977. *See*
Exhibit 4.  A true and accurate copy of a page from Plaintiff's website is attached
as Exhibit 4.

31.    Although not incorporated until June of 2014, by means including at
least its website at http://mobiletechinc.com, Plaintiff has represented to the public,
including its customers and potential customers, that "[f]or over 40 years, MTI has
been a global leader in mobile device display technologies . . . ." *See* Exhibit 5.  A
true and accurate copy of a page from Plaintiff's website is attached as Exhibit 5.

32.    Plaintiff has represented to the public and/or caused to be represented
to the public, including its customers and potential customers, that Plaintiff had

41

"rebranded and changed its corporate name to Mobile Technologies, Inc." and that it was "formerly Merchandising Technologies, Inc." *See* Exhibit 6, which is a true and accurate copy of a page from Plaintiff's website at http://mobiletechinc.com/blog/2013/08/mobile-technologies-inc-and-the-enterprise-tablet-pro/.

33. In a filing on January 12, 2018 (Case No. 2:17-cv-07491, ECF No. 36, p. 3 at fn. 1) Plaintiff has represented to the Court that "Plaintiff here is not the same as the plaintiff [Merchandising Technologies, Inc.] involved in the First and Second Vanguard Litigations . . . ." (The First and Second Vanguard Litigations are described *infra* at paragraphs 35 through 75).

34. Plaintiff is estopped from denying that it was formerly Merchandising Technologies, Inc.

### The Vanguard Litigations

35. On or about April 19, 2007, Vanguard Products Group, Inc. (Vanguard) filed an action for patent infringement against Merchandising Technologies, Inc. in the United States District Court for the Northern District of Illinois. *See* Case No. 1:07-cv-02178 (N.D. Ill.), ECF No. 1 (hereinafter the "First Vanguard Litigation").

36. On or about June 21, 2007, Bruce A. Kaser (Kaser) was admitted as an attorney of record for Merchandising Technologies, Inc. in the First Vanguard

42

Litigation. By Order of August 21, 2007, the United States District Court for the Northern District of Illinois transferred the First Vanguard Litigation to the District of Oregon. *See* Case No. 1:07-cv-02178 (N.D. Ill.), ECF No. 52. Attorney Kaser of Vantage Law PLLC continued representing Merchandising Technologies, Inc. in the First Vanguard Litigation after it was transferred to the United States District Court for the District of Oregon.

37.     As attorney for Merchandising Technologies, Inc., Kaser had knowledge of the matters involved in the First Vanguard Litigation.

38.     On May 11, 2009 the parties in the First Vanguard Litigation filed a Joint Motion for Entry of Consent Judgment in the District of Oregon, which was signed by Kaser as attorney for Merchandising Technologies, Inc. *See* Case 3:07-cv-01405-BR (D. Or.), ECF No. 345.

39.     On May 11, 2009, the District of Oregon signed and entered a Final Judgment by Consent and Permanent Injunction. *See* Exhibit 7, Case 3:07-cv-01405-BR (D. Or.), ECF No. 346 (Final Judgment by Consent). A true and accurate copy of the Final Judgment by Consent is included as Exhibit 7.

40.     The Final Judgment by Consent, which was signed by Kaser, included the following at paragraph 7:

> 7.     Vanguard and Telefonix acknowledge that MTI may be able to design
> new and/or modify existing Freedom products so that they do not infringe and, therefore, are not
> Enjoined Products.  This injunction does not apply to:
>
>> a.     MTI products with coiled cord and no reel; and
>>
>> b.     Freedom LP3, with a conductor-less mechanical retractor,
>
> both as shown in MTI's 2009 Virtual Store Tour Video and available at www.mti-
> interactive.com as of May 8, 2009.

*See* Exhibit 7.

41.     Merchandising Technologies, Inc., through attorney Kaser, requested and consented to the Final Judgment by Consent including the judicial finding at paragraph 7 thereof.

42.     Kaser signed the Final Judgment by Consent and thereby had knowledge of the Final Judgment by Consent including paragraph 7 thereof.  *See* Exhibit 7, p. 3.

43.     Kaser also had knowledge of Merchandising Technologies, Inc.'s consent to the Final Judgment by Consent.

44.     Through the Final Judgment by Consent, Merchandising Technologies, Inc. agreed that Freedom LP3 was publicly available as of May 8, 2009.

45.     Through the Final Judgment by Consent, Merchandising Technologies, Inc. agreed that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

44

46. Freedom LP3 was a product of Plaintiff.

47. Freedom LP3 was a product of Merchandising Technologies, Inc.

48. The website www.mti-interactive.com was owned by Plaintiff.

49. The website www.mti-interactive.com was owned by Merchandising Technologies, Inc.

50. MTI's 2009 Virtual Store Tour Video was publicly available at the website www.mti-interactive.com as of April 21, 2009 as well as an invitation to request additional information regarding Freedom LP3 that was shown in the Video.

51. Freedom LP3 was a product having a conductor-less mechanical retractor that was shown in MTI's 2009 Virtual Store Tour Video and available at the website address www.mti-interactive.com as of May 8, 2009.

52. MTI's 2009 Virtual Store Tour Video was publicly available at the website www.mti-interactive.com as of May 8, 2009.

53. MTI's 2009 Virtual Store Tour Video includes a presentation by Jason Goldberg ("Goldberg"), who is identified as "Vice President, Marketing MTI."

54. MTI's 2009 Virtual Store Tour Video disclosed various features of Freedom LP3 and information material to patentability including, for example, that it was a cable management apparatus for use in mounting an electronic device to a display, included a puck attached to a product on display, and included powering

45

of the product using contacts on the puck and a base of the display so that when the puck is placed on the base, an electrical connection is created between the contacts so that the product's batteries can be charged via a cable between the puck and the product.

55.     MTI's 2009 Virtual Store Tour Video disclosed various features of Freedom LP3 and information material to patentability including, for example, that the puck is connected to the base with a mechanical retractor.

56.     MTI's 2009 Virtual Store Tour Video disclosed various features of Freedom LP3 and information material to patentability including, for example, that the puck communicates wirelessly with the base and if the puck is moved too far away from the display, an alarm will be triggered.

57.     MTI's 2009 Virtual Store Tour Video disclosed various features of Freedom LP3 and information material to patentability including, for example, a base assembly electrical contact and a puck assembly electrical contact that are adapted to lose contact with each other in response to movement of the puck assembly from the rest position to the lift position to thereby break the electrical connection.

58.     MTI's 2009 Virtual Store Tour Video disclosed various features of Freedom Universal 2.0, Freedom LP3, Intuition Lift, Intuition Lift ES, and information material to patentability, including, for example, if any product is

46

lifted from the display, product information will be displayed for the electronic device that has been lifted.

59.     Upon information and belief, Freedom LP3 was on sale as of May 8, 2009.

60.     Upon information and belief, Freedom LP3 was in public use as of May 8, 2009.

61.     Freedom LP3 was publicly available as of May 8, 2009.

62.     As part of the settlement of the First Vanguard Litigation, Michael J. Cook, Merchandising Technologies, Inc.'s then CEO, signed a Confidential Settlement Agreement on or about May 11, 2009. *See* Exhibit 8, Case 3:10-cv-00392-BR (D. Or.), ECF No. 1 (Confidential Settlement Agreement).  A true and accurate copy of the Confidential Settlement Agreement is included as part of Exhibit 8.

63.     In the Confidential Settlement Agreement, Cook, acting in his capacity as CEO of Merchandising Technologies, Inc., agreed that Freedom LP3 was "shown in MTI's 2009 Virtual Store Tour Video and available at www.mti-interactive.com of May 8, 2009." *See* Exhibit 8, p. 2, ¶ 3.

64.     After the Confidential Settlement Agreement was executed, Merchandising Technologies, Inc. sent out to customers a Notice of June 15, 2009, a true and accurate copy of which is attached as Exhibit 9.  Among other things,

the Notice publicly indicated the following:

- VPG acknowledges that MTI may be able to design new and/or modify existing Freedom products so they do not infringe. For example VPG acknowledges that MTI products with a coiled cord and no reel; and Freedom LP3, with a conductor-less mechanical retractor (both as shown in MTI's 2009 Virtual Store Tour Video and available at www.mti-interactive.com as of May 8, 2009) do not infringe.

*Id*.

65.     On April 9, 2010, Vanguard filed another action against Merchandising Technologies, Inc. for civil contempt, breach of contract, declaratory judgment, injunction, and accounting. *See* Exhibit 10, Case No. 3:10-cv-00392-BR (D. Or.), ECF No. 1 (hereinafter the "Second Vanguard Litigation"). A true and accurate copy of the Complaint filed in the Second Vanguard Litigation is attached as Exhibit 10.

66.     In its Complaint in the Second Vanguard Litigation, Vanguard asserted that, *inter alia*, Merchandising Technologies, Inc. had breached the Confidential Settlement Agreement and violated the Final Judgment by Consent that ended the First Vanguard Litigation. *See* Exhibit 10.

67.     During the Second Vanguard Litigation, Merchandising Technologies, Inc. submitted the Declaration of Thaine Allison. *See* Exhibit 11, Case No. 3:10-cv-00392-BR (D. Or.), ECF No. 34.  A true and accurate copy of the October 20, 2010 Declaration of Thaine Allison is attached as Exhibit 11.

68.     Allison is identified as an inventor on the face of the '140 patent; the

48

'617 patent; and the '618 patent. Although eventually removed as discussed later herein, Allison was initially identified as an inventor for U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit.

69.     Allison was involved in assisting with the defense of the First Vanguard Litigation.

70.     In his Declaration of October 20, 2010, at paragraph 30, Allison declared the following under penalty of perjury:

> 30.     As a result, before the Settlement Agreement was signed, MTI had developed at least two noninfringing alternative systems, neither of which used a powered cord in a reel retractor. The Confidential Settlement Agreement refers to these systems as: "Freedom Universal 2.0, with coiled cord and no reel," and "Freedom LP3, with a conductor-less mechanical retractor," MTI refers to its coiled cord system as a "Smart Tether." It is reinforced, has a built-in alarm system and powers the unit, but uses a coiled cord, like a very heavy duty phone cord, instead of a reel retractor as described in Plaintiffs' Patent. The Confidential Settlement Agreement notes that both these products were shown in MTI's 2009 Virtual Store Tour Video, which obviously predated that Agreement. Confidential Settlement Agreement at para. 3.

*See* Exhibit 11 (Declaration of Thaine Allison).

71.     As of at least October 20, 2010, Allison adopted and represented as true that Freedom LP3 was publicly available before May 11, 2009.

72.     As of at least October 20, 2010, Allison adopted and represented as true that MTI's 2009 Virtual Store Tour Video showing Freedom LP3 was publicly available before May 11, 2009.

49

73. Upon information and belief, as of at least October 20, 2010, Thaine Allison knew Freedom LP3 had been for sale on or before May 11, 2009.

74. Upon information and belief, as of at least October 20, 2010, Thaine Allison knew Freedom LP3 had been in public use on or before May 11, 2009.

75. Upon information and belief, as of at least October 20, 2010, Thaine Allison knew Freedom LP3 had been publicly available on or before May 11, 2009.

## The '944 Application and U.S. Patent No. 8,698,617

76. On June 21, 2010, attorney Kaser, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 12/819,944 ('944 application) to be filed with the USPTO.

77. U.S. Application No. 15/221,497, which issued as the asserted '140 patent, claims priority to U.S. Application No. 14/092,845, which claims priority to U.S. Patent Application No. 14/066,606, which claims priority to the '944 application. The '944 application eventually issued as U.S. Patent No. 8,698,617 (the "'617 patent").

78. As originally filed, U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit, also claimed priority to the '944 application.

79. Freedom LP3 had one or more features described and claimed in the '944 application.

50

80.     Freedom LP3 had one or more features described and claimed in the '617 patent.

81.     MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '944 application.

82.     MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '617 patent.

83.     Attorney Kaser was aware, and admitted in a U.S. District Court, that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 8, 2009.

84.     Attorney Kaser was aware Freedom LP3 had one or more features described and claimed in the '944 application and the '617 patent.

85.     Attorney Kaser was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '944 application and the '617 patent.

86.     In filing the '944 application, attorney Kaser filed electronic documents having the following filenames:

Specification MTILP3.pdf

ClaimsMTILP3.pdf

AbstractMTILP3.pdf

DrawingsMTILP3.pdf

51

*See* Exhibit 12.

87.    A true and accurate copy of the June 21, 2010 Electronic Acknowledgment Receipt relevant to the '944 application is attached hereto as Exhibit 12.

88.    As recorded at "Reel: 024898, Frame 0653," Attorney Kaser filed assignments of the '944 application with the USPTO and submitted a form in connection therewith indicating his Attorney Docket Number as "MTI – LP3." A true and accurate copy of such form along with the assignments is attached as Exhibit 13.

89.    Although aware that such information was material to the patentability of the subject matter disclosed in the '944 application, during prosecution of the '944 application, attorney Kaser never disclosed to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

90.    On March 19, 2014, attorney Kaser filed an Information Disclosure Statement with the USPTO that did not disclose the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009. *See* Exhibit 14.  A true and accurate copy of the March 19,

2014 Information Disclosure Statement is attached as Exhibit 14.

91.     As the patent attorney who filed and prosecuted the '944 application to which the '617 patent and '140 patent claim priority, Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Kaser to be material to patentability of the '944 application.

92.     The duty of candor and good faith required attorney Kaser to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

93.     On information and belief, attorney Kaser, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

94.     Allison, a named inventor for the '617 patent, was aware and had adopted and acknowledged as true that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of at least May 11, 2009.

95.     Allison was aware Freedom LP3 had one or more features described and claimed in the '944 application and the '617 patent.

53

96. Allison was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '944 application and the '617 patent.

97. Although aware that such information was material to the patentability of the '944 application, during prosecution of the '944 application, named-inventor Allison never disclosed to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

98. Although aware that such information was material to the patentability of the subject matter disclosed in the '944 application, during prosecution of the '944 application, Allison never disclosed that Freedom LP3 had been for sale on or before May 11, 2009 or had been in public use on or before May 11, 2009.

99. As an inventor identified with the '944 application to which the '140 patent claims priority, Allison had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Allison to be material to patentability of the '944 application.

100. The duty of candor and good faith duty required Allison to disclose to

54

the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

101. The duty of candor and good faith duty also required Allison to disclose that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before May 11, 2009.

102. On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or the Freedom LP3 and its public availability as of May 8, 2009.

103. On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before May 11, 2009.

104. Upon information and belief, Goldberg, a named inventor for the '617 patent, was aware that Freedom LP3 and MTI's 2009 Virtual Store Tour Video (in which Goldberg appeared) were publicly available as of at least May 8, 2009.

105. Goldberg was aware Freedom LP3 had one or more features described

55

and claimed in the '944 application and the '617 patent.

106. Goldberg was aware MTI's 2009 Virtual Store Tour Video (in which Goldberg appeared) disclosed one or more features described and claimed in the '944 application and the '617 patent.

107. Although aware that such information was material to patentability of the '944 application, during prosecution of the '944 application, Goldberg never disclosed to the USPTO MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009 or Freedom LP3 and its public availability as of May 8, 2009.

108. As an inventor identified with the '944 application to which the '140 patent claims priority, Goldberg had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Goldberg to be material to patentability of the '944 application.

109. The duty of candor and good faith required Goldberg to disclose to the USPTO MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

110. On information and belief, Goldberg, either alone or in conjunction with others, deliberately decided not to disclose MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or the Freedom LP3 and its public availability as of May 8, 2009.

56

111. Following the breach of their duty of candor and good faith in dealing with the USPTO, both named inventors Allison and Goldberg, and attorney Kaser as described herein above, the USPTO issued the '617 patent on April 15, 2014.

112. The above-described acts and omissions of Attorney Kaser and named-inventors Allison and Goldberg, either individually or collectively, constitutes inequitable conduct with regard to the '617 patent

113. The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands. Plaintiff has not cured this unconscionable conduct.

## The '107 Application and U.S. Patent No. 8,698,618

114. On September 22, 2010, Kaser, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 12/888,107 ('107 application) to be filed with the USPTO.

115. U.S. Application No. 15/221,497, which issued as the asserted '140 patent, claims priority to U.S. Application No. 14/092,845, which claims priority to the '606 application, which claims priority to the '944 application. The '107 application also claims priority to the '944 application. The '107 application eventually issued as U.S. Patent No. 8,698,618 (sometimes referred to herein as the "'618 patent").

57

116.    As originally filed, U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit, also claimed priority to the '944 application.

117.    Freedom LP3 had one or more features described and claimed in the '107 application

118.    Freedom LP3 had one or more features described and claimed in the '618 patent.

119.    MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '107 application.

120.    MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '618 patent.

121.    Attorney Kaser was aware, and admitted in a U.S. District Court, that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 8, 2009.

122.    Attorney Kaser was aware Freedom LP3 had one or more features described and claimed in the '107 application and the '618 patent.

123.    Attorney Kaser was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '107 application and the '618 patent.

124.    In filing the '107 application, attorney Kaser filed electronic documents having the following filenames:

58

Specification MTIdivisionalLP3.pdf

ClaimsMTIdivisionalLP3.pdf

AbstractMTIdivisionalLP3.pdf

AppData MTIdivisionalLP3.pdf

DrawingsMTIdivisionalLP3.pdf

*See* Exhibit 15.

125.   A true and accurate copy of the September 22, 2010 Electronic

Acknowledgment Receipt relevant to the '107 application is attached hereto as

Exhibit 15.

126.   During prosecution of the '107 application, Kaser, in his capacity as

attorney for Plaintiff, filed with the USPTO on November 19, 2010, a Petition to

Make Special Under Accelerated Examination Program.  Therein, attorney Kaser

submitted a Detailed Explanation of Patentability purporting to identify prior art

and assert reasons the claims presented were patentable in view of the same.

127.   On November 19, 2010, attorney Kaser also submitted an Information

Disclosure Statement (IDS) to the USPTO, wherein Kaser identified certain patents

and non-patent literature documents to the USPTO during prosecution of the '107

application.

128.   The filename of the November 19, 2010 IDS that attorney Kaser

uploaded to the USPTO was as follows: IDSFormMTlcontinuationLP3.pdf. *See*

Exhibit 16.

129.   In the November 19, 2010 IDS, Kaser did not disclose the Final

Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual

Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3

and its public availability as of May 8, 2009. *See* Exhibit 16.

130.   On December 17, 2012, the Examiner at the USPTO issued an Office

Action. Therein, the Examiner indicated that claim 7 of the '107 application

(which eventually issued as claim 7 of the '618 patent) was allowable as follows:

Regarding claim 7, patentability resides in "at least one wire-to-wire connection between the source module and the mounting member when the mounting member is in the resting

---

Application/Control Number: 12/888,107                                    Page 7
Art Unit: 2681

position, for electrically communicating the at least one electrical signal from the source module to the mounting member, and wherein the wire-to-wire connection between the source module and the mounting member is broken when the mounting member is lifted from the resting position, and further, the wire-to-wire connection is not made by the mechanical cable", in combination with the other limitations of the claim.

*See* Exhibit 17 at pp. 6-7 of the Office Action of December 17, 2012.  A true and

accurate copy of the Office Action of December 17, 2012 relating to the '107 application is attached as Exhibit 17.

131. The Examiner also rejected claim 7 of the '107 application based on obviousness-type double patenting over claim 26 the '944 application. *See* Exhibit 17 at p. 3.

132. Freedom LP3 was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided with regard to claim 7 of the '107 application.

133. MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided with regard to claim 7 of the '107 application.

134. The December 17, 2012 Office Action was mailed to Kaser at Vantage Law PLLC.

135. Attorney Kaser was aware of the December 17, 2012 Office Action, including its contents. In fact, Kaser submitted a Response to the December 17, 2012 Office Action on June 17, 2013, but in the Response Kaser did not disclose the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

136. On August 26, 2013, the USPTO issued a Final Office Action.

61

Therein, the Examiner again rejected claim 7 based on obviousness-type double patenting over claim 26 the '944 application.

137.   On March 19, 2014, attorney Kaser also submitted another Information Disclosure Statement (IDS) to the USPTO, wherein Kaser identified certain patents and non-patent literature documents to the USPTO during prosecution of the '107 application.

138.   In submitting the IDS of March 19, 2014, Kaser failed to disclose the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009. *See* Exhibit 14.

139.   Although aware that such information was material to the patentability of the '107 application, during prosecution of the '107 application, attorney Kaser never disclosed to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

140.   As the patent attorney who filed and prosecuted the '107 application, which claims priority to the '944 application and issued as the 618 patent, attorney Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Kaser to be

62

material to patentability of the application.

141.   This duty of candor and good faith required Kaser to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

142.   On information and belief, attorney Kaser, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

143.   Allison, a named inventor for the '618 patent, was aware and had adopted and acknowledged as true that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 11, 2009

144.   Allison was aware Freedom LP3 had one or more features described and claimed in the '107 application and the '618 patent.

145.   Allison was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '107 application and the '618 patent.

146.   Although aware that such information was material to the patentability of the '107 application, during prosecution of the '107 application,

63

named-inventor Allison never disclosed to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

147.   Although aware that such information was material to the patentability of the '944 application, during prosecution of the '107 application, Allison never disclosed that Freedom LP3 had been for sale on or before May 11, 2009 or had been in public use on or before May 11, 2009.

148.   As an inventor identified with the '107 application, which claims priority to the '944 application and issued as the '618 patent, Allison had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Allison to be material to patentability of the '107 application.

149.   This duty of candor and good faith required named-inventor Allison to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

150.   This duty of candor and good faith also required Allison to disclose

64

that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before May 11, 2009.

151.   On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

152.   On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before May 11, 2009.

153.   Upon information and belief, Goldberg, a named inventor for the '618 patent, was aware that Freedom LP3 and MTI's 2009 Virtual Store Tour Video (in which Goldberg appeared) were publicly available as of at least May 8, 2009.

154.   Goldberg was aware Freedom LP3 had one or more features described and claimed in the '107 application and the '618 patent.

155.   Goldberg was aware MTI's 2009 Virtual Store Tour Video (in which Goldberg appeared) disclosed one or more features described and claimed in the '107 application and the '618 patent.

156. Although aware that such information was material to the patentability of the '107 application, during prosecution of the '107 application, Goldberg never disclosed to the USPTO MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

157. As an inventor identified with the '107 application, which claims priority to the '944 application and issued as the '618 patent, Goldberg had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Goldberg to be material to patentability of the '107 application.

158. The duty of candor and good faith duty required Goldberg to disclose to the USPTO MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

159. On information and belief, Goldberg, either alone or in conjunction with others, deliberately decided not to disclose MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or the Freedom LP3 and its public availability as of May 8, 2009.

160. Following the breach of their duty of candor and good faith in dealing with the USPTO , both named inventors Allison and Goldberg, and attorney Kaser, as described herein above, the USPTO issued the '618 patent on April 15, 2014.

66

161.   The above-described acts and omissions of Attorney Kaser and named-inventors Allison and Goldberg, either individually or collectively, constitutes inequitable conduct with regard to the '618 patent.

162.   The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.  Plaintiff has not cured this unconscionable conduct.

**The '606 Application**

163.   On October 29, 2013, Kaser, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 14/066,606 ('606 application) to be filed with the USPTO.

164.   U.S. Application No. 15/221,497, which issued as the asserted '140 patent, claims priority to U.S. Application No. 14/092,845, which claims priority to the '606 application.

165.   As originally filed, U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit, also claimed priority to the '606 application.

166.   Freedom LP3 had one or more features described and claimed in the '606 application.

167.   MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '606 application.

67

168.   Attorney Kaser was aware, and admitted in a U.S. District Court, that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 8, 2009.

169.   Attorney Kaser was aware Freedom LP3 had one or more features described and claimed in the '606 application.

170.   Attorney Kaser was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '606 application.

171.   Although aware that such information was material to the patentability of the '606 application, during prosecution of the '606 application, attorney Kaser never disclosed to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

172.   As the patent attorney who filed and prosecuted the '606 application to which the '140 patent claims priority, Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Kaser to be material to patentability of the application.

173.   This duty of candor and good faith required attorney Kaser to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of

68

May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

174.   On information and belief, Kaser, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

175.   The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.  Plaintiff has not cured this unconscionable conduct.

### The '845 Application

176.   On November 27, 2013, Kaser, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 14/092,845 ('845 application) to be filed with the USPTO.

177.   U.S. Application No. 15/221,497, which issued as the asserted '140 patent, claims priority to the '845 application, which claims priority to the '606 application, which claims priority to the '944 application.

178.   As originally filed, U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit, also claimed priority to the '845 application.

179.   Freedom LP3 had one or more features described and claimed in the

'845 application.

180. Attorney Kaser was aware, and admitted in a United States District Court, that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 8, 2009.

181. Attorney Kaser was aware Freedom LP3 had one or more features described and claimed in the '845 application.

182. Attorney Kaser was aware MTI's 2009 Virtual Store Tour Video had one or more features described and claimed in the '845 application.

183. In filing the '845 application, Attorney Kaser filed electronic documents having the following filenames:

aia0014LP3.pdf

DrawingsMTILP3.pdf

*See* Exhibit 18.

184. A true and accurate copy of the November 27, 2013 Electronic Acknowledgment Receipt relevant to the '845 application is attached hereto as Exhibit 18.

185. In filing the '845 application, Attorney Kaser filed an Application Data Sheet indicating that the '845 application was to be examined under the first inventor to file provisions of the America Invents Act (AIA). *See* Exhibit 19, p. 5. A true and accurate copy of the February 20, 2014 Application Data Sheet is

70

attached as Exhibit 19.

186.  During prosecution of the '845 application, Attorney Kaser filed a Request for Continued Examination (RCE) on November 27, 2013 and, in connection therewith, filed electronic documents having the following filenames:

> LP3RCE
>
> AppDataSheetLP3845

*See* Exhibit 20.

187.  A true and accurate copy of the December 16, 2015 Electronic Acknowledgment Receipt relating to the RCE filed with the '845 application is attached hereto as Exhibit 20.

188.  On September 16, 2015, the USPTO issued a Notice of Allowability that was mailed to attorney Kaser at Vantage Law PLLC.  Therein, the Examiner notified Kaser that the '845 application was being examined under the first inventor to file provisions of the America Invents Act (AIA). *See* Exhibit 21 at p. 8.  A true and accurate copy of the Notice of Allowability is attached as Exhibit 21.

189.  Although aware that such information was material to the patentability of the '845 application, during prosecution of the '845 application, Attorney Kaser never disclosed to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as

71

of May 8, 2009.

190.　As the patent attorney who filed and prosecuted the '845 application to which the '140 patent claims priority, Attorney Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Kaser to be material to patentability of the application.

191.　This duty of candor and good faith required Kaser to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

192.　On information and belief, Attorney Kaser, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

193.　The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.　Plaintiff has not cured this unconscionable conduct.

## The '497 Application and U.S. Patent No. 9,786,140

194.  On July 27, 2016, Kaser, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 15/221,497 ('497 application) to be filed with the USPTO.

195.  The '497 application claims priority to the '845 application, which claims priority to the '606 application, which claims priority to the '944 application.  The '497 application eventually issued as the '140 patent asserted by Plaintiff in the present action.

196.  As originally filed, U.S. Application No. 15/826,017, which issued as the '281 patent-in-suit, also claimed priority to the '497 application.

197.  Freedom LP3 had one or more features described and claimed in the '497 application.

198.  Freedom LP3 had one or more features described and claimed in the '140 patent.

199.  MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '497 application.

200.  MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '140 patent.

201.  Attorney Kaser was aware, and admitted in a U.S. District Court, that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as

73

of May 8, 2009.

202. Attorney Kaser was aware Freedom LP3 had one or more features described and claimed in the '497 application and the '140 patent.

203. Attorney Kaser was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '497 application and the '140 patent.

204. On October 11, 2016 as part of prosecution of the '497 application, attorney Kaser filed electronic documents having the following filenames:

> MissingPartsResponseLP3.pdf
>
> SpecificationLP3substitute.pdf
>
> ClaimsLP3substitute.pdf
>
> AbstractLP3substitute.pdf
>
> ReplacementDrawingsLP3.pdf

*See* Exhibit 22.

205. A true and accurate copy of the October 11, 2016 Electronic Acknowledgment Receipt relevant to the '497 application is attached hereto as Exhibit 22.

206. On December 2, 2016, the USPTO issued an Office Action indicating, among other things, that pending claims 1-27 of the '497 application would be allowable. *See* Exhibit 23, p. 4. A true and accurate copy of the Office Action is

attached as Exhibit 23.

207.	The December 2, 2016 Office Action indicated that the '497 application was being examined under the first inventor to file provisions of the AIA. *See* Exhibit 23 at p. 2.

208.	In the December 2, 2016 Office Action, the Examiner provided the following statement of reasons for allowance:

> Regarding claim 1, patentability resides in "a security sensor arrangement carried by the mounting member, the security sensor arrangement operating from power supplied via the same single-source power signal at least when the mounting member is in the resting position, and further, the security sensor arrangement being operated by the battery storage means when the mounting member is lifted from the resting position", in combination with the other limitations of the claim.
>
> Regarding claims 7, 14, and 21, patentability resides in "wherein the wire-to-wire connection between the source module and the mounting member is broken when the mounting member is lifted from the resting position, and further, the wire-to-wire connection is not made by the mechanical cable", in combination with the other limitations of the claim.
>
> The closest prior art, Deconinck et al. (US 7,209,038) and Rapp et al. (US 7,724,135). Deconinck et al. disclose security system for power and display of consumer electronic devices, and Rapp et al. disclose coiled cable display device. The references, either singularly or in combination, fail to anticipate or render the above limitations obvious.

*See* Exhibit 23, p. 4.

209.	Freedom LP3 was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided. *See* Exhibit 23, p. 4; *see also* Exhibit 7, paragraph 7.b.

75

210.   MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided. *See* Exhibit 23, p. 4; *see also* Exhibit 7, paragraph 7.b.

211.   In the December 2, 2016 Office Action, the Examiner also rejected claims 1-27 based on obviousness-type double patenting over claims 1-7 of U.S. Patent No. 8,698,617. *See* Exhibit 23, pp. 2-3.

212.   The December 2, 2016 Office Action was mailed to attorney Kaser at Vantage Law PLLC.

213.   Upon information and belief, attorney Kaser was aware of the December 2, 2016 Office Action, including its contents.

214.   On March 2, 2017, Benjamin L. Volk, in his capacity as attorney for Plaintiff, filed a Response to the December 2, 2016 Office Action on behalf of Plaintiff.  *See* Exhibit 24.  A true and accurate copy of Volk's Response of March 2, 2017 is attached as Exhibit 24.

215.   Volk is an attorney with the law firm of Thomson Coburn LLP, the same law firm representing Plaintiff in the present action.

216.   As of at least March 2, 2017, attorney Volk was aware of the Examiner's statement of reasons for allowance set forth in the Office Action of December 2, 2016.

76

217.   In the Response of March 2, 2017, attorney Volk expressly acknowledged that the December 2, 2016 "Office action identified claims 1-27 as reciting allowable subject matter." *See* Exhibit 24.  On behalf of Plaintiff, Volk also submitted to the USTPO for examination new claims including claims 28 through 41.  *See* Exhibit 24.  Claim 28 eventually issued as claim 26 of the '140 patent.

218.   On May 26, 2017, the USPTO mailed a Notice of Allowance and Fee(s) due with a Notice of Allowability for the '497 application and included a Detailed Action indicating claims 1-41 were allowable. *See* Exhibit 25.  A true and accurate copy of the Notice of Allowability is attached as Exhibit 25.

219.   The Detailed Action of May 26, 2017 indicated that the '497 application was being examined under the first inventor to file provisions of the AIA. *See* Exhibit 25, p. 2.

220.   With regard to claim 28 of the '497 application (which became claim 26 of the '140 patent), the USPTO Examiner indicated the following:

> Regarding claim 28, patentability resides in "wherein the base assembly contact and the puck assembly contact are adapted to contact each other when the puck assembly is in the rest position to form an electrical connection between the puck assembly circuitry and the base assembly circuitry; and wherein the base assembly contact and the puck assembly contact are

adapted to lose contact with each other when the puck assembly is in the lift position to thereby break the electrical connection", in combination with the other limitations of the claim.

The closest prior art, Deconinck et al. (US 7,209,038) and Rapp et al. (US 7,724,135). Deconinck et al. disclose security system for power and display of consumer electronic devices, and Rapp et al. disclose coiled cable display device. The references, either singularly or in combination, fail to anticipate or render the above limitations obvious.

*See* Exhibit 25, pp. 2-3.

221.    Freedom LP3 was publicly available as of May 8, 2009 and disclosed the features in which the Examiner concluded patentability resided with regard to claim 28 of the '497 application.

222.    MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009 and disclosed the features in which the Examiner concluded patentability resided with regard to claim 28 of the '497 application.

223.    The Notice of Allowance of May 26, 2017 was mailed to attorney Kaser at Vantage Law PLLC.  *See* Exhibit 25.

224.    Upon information and belief, attorney Kaser was aware of the Notice of Allowance, including the contents of the Detailed Action.

225.    Upon information and belief, attorney Volk obtained a copy of the Notice of Allowance of May 26, 2017 or became aware of the Notice of Allowance, including the contents of the Detailed Action.

226.    On or about July 24, 2017, attorney Volk, in his capacity as attorney

78

for Plaintiff, filed a Request for Continued Examination of the '497 application that included an "Amendment and Response with Request for Continued Examination (RCE)." Therein, Volk amended one or more of claims 1-41 and presented new claims 42-98.

227. Upon information and belief, the "Amendment and Response with Request for Continued Examination (RCE)" presented during prosecution of the '497 application was part of a decision by Plaintiff to use the '497 application to seek claims covering one or more products of InVue. Upon information and belief, Plaintiff wanted such claims for use as the basis of a retaliatory suit, i.e. the current action, against InVue. InVue has previously filed six (6) patent infringement lawsuits against Plaintiff (*InVue Security Products, Inc. v. Mobile Tech, Inc.*, 3:15-cv-00610, 3:16-cv-00553, 3:16-cv-00734, 3:17-cv-00075 and 3:17-cv-00270 (W.D.N.C.) and *InVue Security Products, Inc. v. Mobile Tech, Inc.*, 1:18-cv-2653 (D. Ind.)), which have been consolidated and are currently pending in the United District Court for the District of Oregon (*InVue Security Products, Inc. v. Mobile Tech, Inc.*, 3:17-cv-01356-SI (D. Or.)).

228. Attorney Volk knew information about Freedom LP3 was material to the '497 application.

229. On August 2, 2017, attorney Volk, in his capacity as attorney for Plaintiff, submitted an Information Disclosure Statement that he signed on July 28,

79

2017 (IDS of July 28, 2017) to the USPTO. *See* Exhibit 26. A true and accurate copy of IDS of July 28, 2017 is attached as Exhibit 26.

230. In the IDS of July 28, 2017, Volk cited nineteen (19) U.S. patents, twenty-two (22) U.S. patent application publications, thirteen (13) foreign patent documents, and nineteen (19) non-patent literature documents – thereby citing a total of seventy-three (73) references to the Examiner. *See* Exhibit 26.

231. With the IDS of July 28, 2017, Volk provided no explanation of why any of the references were being cited or their relevance to the '497 application. *See* Exhibit 26. In addition, the contents of any reference relative to Freedom LP3 were buried among the seventy-three (73) references cited in the IDS without explanation.

232. The earliest claimed priority date of the '140 patent is June 21, 2010, the date on which the '944 application was filed.

233. In the IDS of July 28, 2017, attorney Volk cited at least three links to YouTube videos that were entitled "Installing LP3 Old Version;" "Virtual Tour of MTI Retail Innovation Center in 2009;" and "MTI LP3 Product Mounting." *See* Exhibit 26, Non-Patent Literature Documents, Cite Nos. 5, 6, and 8.

234. However, for each such cite in the IDS of July 28, 2017, Volk also indicated to the Examiner that such were not published until after the earliest claimed priority date of June 21, 2010 for the '140 patent. *See* Exhibit 26, Non-

80

Patent Literature Documents, Cite Nos. 5, 6, and 8.

235.    Attorney Volk also cited a SlideShare Presentation entitled "Freedom Lp3 4.17.09." *See* Exhibit 26, Non-Patent Literature Documents, Cite No. 9. However, Volk indicated to the Examiner that such was not published until July 28, 2009, which is less than one year before the earliest claimed priority date of June 21, 2010 for the '140 patent. *Id*.

236.    In particular, the IDS submitted by Attorney Volk represented that the video entitled "Virtual Tour of MTI Retail Innovation Center in 2009" was not published until August 2, 2010.  *Id*.

237.    This representation was false because, as admitted by Plaintiff and judicially decreed in the First Vanguard Litigation, as agreed to in the Confidential Settlement Agreement signed by CEO Michael J. Cook, and as adopted and represented as true by Allison, such video was available by at least May 8, 2009, which is more than one year before the earliest claimed priority date of the '140 patent (the earliest claimed priority date is June 21, 2010, the date on which the '944 application was filed).

238.    Attorney Volk knew that in the Vanguard Litigations, Plaintiff made statements and submissions that were material to the patentability of the '944 application.

239.    For example, in the IDS of July 28, 2017, attorney Volk cited the

81

"Declaration of Mike Cook." *See* Exhibit 26 (Non-Patent Literature Documents, Cite No. 10). This was a declaration Plaintiff submitted to the District Court for Oregon in the Second Vanguard Litigation on October 20, 2010. *See* Case 3:10-cv-00392-BR (D. Or.), ECF No. 33.

240. However, the Declaration of Mike Cook as cited in the IDS of July 28, 2017, does not reference Freedom LP3 and does not disclose the information material to patentability that attorney Kaser and named-inventors Goldberg and Allison failed to disclose to the USPTO during prosecution of the '497 application and the applications to which it claims priority.

241. In the IDS of July 28, 2017, attorney Volk also cited Exhibit 1005 to the Declaration of Mike Cook. *See* Exhibit 26, Non-Patent Literature Documents, Cite No. 11.

242. However, Exhibit 1005 as cited in the IDS of July 28, 2017, does not disclose the information material to patentability that attorney Kaser and named-inventors Goldberg and Allison (addressed below) failed to disclose to the USPTO during prosecution of the '497 application and the applications to which it claims priority.

243. In the IDS of July 28, 2017, attorney Volk also cited multiple declarations of Thaine Allison obtained by Volk from other adversarial proceedings involving Plaintiff. *See* Exhibit 26, Non-Patent Literature Documents,

Cite Nos. 12, 13.

244. However, despite knowing about the Vanguard Litigations, despite citing to the Vanguard Litigations and to declarations of Thaine Allison, attorney Volk did not disclose any of the following from the Vanguard litigations to the USPTO:

(a) the Final Judgment by Consent and Permanent Injunction (Case 3:07-cv-01405-BR (D. Or.), ECF No. 346) (the Final Judgment by Consent) entered in the First Vanguard Litigation indicating, *inter alia*, Freedom LP3 and MTI's 2009 Virtual Store Video were available as of May 8, 2009 (Exhibit 7);

(b) the Confidential Settlement Agreement signed by Michael J. Cook as part of the settlement of the First Vanguard Litigation agreeing that Freedom LP3 and MTI's 2009 Virtual Store Video were available as of May 8, 2009 (Exhibit 8); and

(c) the Declaration of Thaine Allison of October 20, 2010 adopting and representing as true that Freedom LP3 was publicly available as of at least May 11, 2009 (Exhibit 11).

245. Attorney Kaser did not file an Information Disclosure Statement with the USPTO during prosecution of the '497 application.

246. Although aware that such information was material to the

83

patentability of the '497 application, during prosecution of the '497 application, attorney Kaser never disclosed to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

247.   As the patent attorney who filed and prosecuted the '497 application which issued as the '140 patent, attorney Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Kaser to be material to patentability of the '497 application.

248.   This duty of candor and good faith required Kaser to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

249.   On information and belief, attorney Kaser, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

250.   Although aware that such information was material to the patentability of the subject matter disclosed in the '497 application, during

84

prosecution of the '497 application, attorney Volk never disclosed to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that the Freedom LP3 was publicly available as of May 8, 2009; or that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

251.   As the patent attorney who also prosecuted the '497 application which issued as the '140 patent, attorney Volk had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Volk to be material to patentability of the '497 application.

252.   This duty of candor and good faith required Volk to disclose to the USPTO at least the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that Freedom LP3 was publicly available as of May 8, 2009; and that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

253.   On information and belief, attorney Volk, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that Freedom LP3 was publicly available as of May 8, 2009; and/or that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

85

254. Allison, a named inventor for the '140 patent, was aware and had adopted and acknowledged as true that Freedom LP3 and MTI's 2009 Virtual Store Tour Video were publicly available as of May 8, 2009

255. Allison was aware Freedom LP3 had one or more features described and claimed in the '497 application and the '140 patent.

256. Allison was aware MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '497 application and the '140 patent.

257. Although aware that such information was material to the patentability of the '497 application, during prosecution of the '497 application, named-inventor Allison never disclosed to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

258. Although aware that such information was material to the patentability of the '497 application, during prosecution of the '497 application, Allison never disclosed to the USPTO that Freedom LP3 had been for sale on or before May 11, 2009 or had been in public use on or before May 11, 2009.

259. As an inventor identified with the '497 application, which issued as

86

the '140 patent, Allison had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Allison to be material to patentability of the application.

260. The duty of candor and good faith duty required named-inventor Allison to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

261. The duty of candor and good faith duty also required Allison to disclose that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before May 11, 2009.

262. On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010, the Confidential Settlement Agreement; MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or Freedom LP3 and its public availability as of May 8, 2009.

263. On information and belief, Allison, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO that Freedom LP3 had been for sale on or before May 11, 2009 and had been in public use on or before

87

May 11, 2009.

264.   Upon information and belief, Goldberg, a named inventor for the '140 patent, was aware that Freedom LP3 and MTI's 2009 Virtual Store Tour Video (in which Goldberg appeared) were publicly available as of at least May 8, 2009.

265.   Goldberg was aware Freedom LP3 had one or more features described and claimed in the '497 application and the '140 patent.

266.   Goldberg was aware MTI's 2009 Virtual Store Tour Video  (in which Goldberg appeared) disclosed one or more features described and claimed in the '497 application and the '140 patent.

267.   As an inventor identified with the '497 application, which issued as the '140 patent, Goldberg had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Goldberg to be material to patentability of the '497 application.

268.   The duty of candor and good faith required Goldberg to disclose to MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; and Freedom LP3 and its public availability as of May 8, 2009.

269.   On information and belief, Goldberg, either alone or in conjunction with others, deliberately decided not to disclose MTI's 2009 Virtual Store Tour Video and its public availability as of May 8, 2009; or the Freedom LP3 and its public availability as of May 8, 2009.

88

270.    Following the breach of their duty of candor and good faith in dealing with the USPTO, named inventors Allison and Goldberg, attorney Kaser, and attorney Volk, as described herein above, the USPTO issued the '140 patent on October 10, 2017.

271.    The above-described acts and omissions of Attorney Kaser, Attorney Volk, and named-inventors Allison and Goldberg, either individually or collectively, constitutes inequitable conduct with regard to the '140 patent.

272.    The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.  Plaintiff has not cured this unconscionable conduct.

## The '017 Application and U.S. Patent No. 10,026,281

273.    On November 29, 2017, attorney Volk, in his capacity as attorney for Plaintiff, caused U.S. Patent Application No. 15/826,017 ("'017 application") to be filed with the USPTO.

274.    In filing the '017 application, Plaintiff relied upon its prior application filings because the '017 application included a claim of priority to these multiple previously filed applications including the '944 application (which issued as the '617 patent as referenced above), the '606 application (referenced above), the '845 application (referenced above), and the '497 application (which issued as the '140

89

patent, as referenced above). The '017 application also claimed priority to U.S.

Application No. 12/351,837 (the "'837 application"), and Plaintiff represented the

'017 application was a continuation-in-part of the '837 application. *See, e.g.*,

Exhibit 27, which is a true and accurate copy of an Application Data Sheet filed in

the '017 application.

275. As originally filed, the '017 application for the '281 patent (U.S.

Application No. 15/826,017) was in the same patent family as the '617 patent, '618

patent, the '606 application, the '845 application, and the '140 patent.

276. The '617 patent, '618 patent, the '606 application, the '845

application, the '140 patent, and the '281 patent are each entitled "Display for

Hand-Held Electronics."

277. The '281 patent (prosecuted as the '017 application) shares a

substantially identical specification and drawings with the '140 patent, the '620

application, and the '845 application. Further, the specifications and drawings of

the '617 patent, the '618 patent and the '606 application are included substantially

in their entirety in the specification and drawings of the '281 patent.

278. In particular, the '281, '617, and '618 share substantially identical

figures 1-26 and accompanying description. Likewise, the '281 patent and the

'606 application share substantially identical figures 1-31 and accompanying

description.

90

279.   Additionally, the reasons for allowance of the claims of the '281 patent and independent claims 1, 12, and 26 of the '140 patent (independent claims 1, 14, and 28 of the '497 application) are substantially the same and rely for patentability on features present in Freedom LP3.

280.   The '617 patent, '618 patent, the '606 application, the '845 application, the '140 patent, and the '281 patent each include claims expressly directed to, for example, "[a] cable management apparatus for use in mounting one of a plurality of electronic devices to a display."

281.   The '617 patent, '618 patent, the '606 application, the '845 application, the '140 patent, and the '281 patent each include claims having one or more features found in the Freedom LP3.

282.   Upon information and belief, Freedom LP3 was source material for one or more of the '617 patent, '618 patent, the '606 application, the '845 application, the '140 patent, and the '281 patent.

283.   Freedom LP3 is cable management apparatus for use in mounting one of a plurality of electronic devices to a display.

284.   In its First Amended Complaint, Plaintiff alleges that InVue is infringing the '281 patent by making, using, offering to sell, selling and/or importing certain cable management apparatuses for mounting an electronic device to a display ("Accused Products"). *See, e.g.*, ECF No. 68, Complaint at ¶¶ 28, 32,

34, 36, 38, 40, 42, 44, and 46.

285.   In filing an application for a United States Patent, an applicant is required to file declarations identifying the inventor(s). *See, e.g.*, 35 U.S.C. § 115.

286.   When the '017 application for the '281 patent was filed on November 29, 2017, on behalf of the Plaintiff, attorney Volk also caused to be filed eight (8) declarations identifying Donald Henson, Thaine Allison, Jason Goldberg, Justin Olson, Eric Pitt, Kris Schatz, Wade Wheeler, and Ron Peters as inventors. *See* Exhibit 28.  A true and accurate copy of these eight declarations is attached hereto as Exhibit 28.

287.   These eight individuals originally identified as inventors for '017 application for the '281 patent are the same individuals identified as inventors on the '140 patent.  As set forth above, Allison and Goldberg are also named as inventors in the '617 and '618 patents.

288.   In filing the '017 application, Plaintiff relied upon its prior filing of the '140 patent because each of the eight inventor declarations filed with the '017 application is simply the same declaration for each inventor that was filed during prosecution of the '497 application that resulted in the '140 patent.  For example, each such declaration that Volk, on behalf of the Plaintiff, relied upon in filing the '017 application for the '281 patent stated the following:

| Title of Invention | Display for Hand-Held Electronics |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☑ United States application or PCT international application number 15/221,497

filed on July 27, 2016

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

*See, e.g.*, Exhibit 28. U.S. application number 15/221,497 is the '497 application that eventually issued as the '140 patent. Plaintiff has asserted the '140 patent against InVue in this action.

289. Freedom LP3 had one or more features described and claimed in the '017 application.

290. Freedom LP3 had one or more features described and claimed in the '281 patent.

291. MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '017 application.

292. MTI's 2009 Virtual Store Tour Video disclosed one or more features described and claimed in the '281 patent.

293. Plaintiff represents to the public that Freedom LP3 is protected by the '281 patent. *See* Exhibit 29, which is a true and accurate copy of a page from Plaintiff's website at http://mobiletechinc.com/patents/ as of the date of filing this

93

pleading.

294.   Using its website at http://mobiletechinc.com/patents/, Plaintiff asserts that it has virtually marked Freedom LP3 with the '281 patent as required by 35 U.S.C. 287(a). *See* Exhibit 29.

295.   Attorney Volk knew information about Freedom LP3 that was material to the '017 application.

296.   On November 29, 2017, attorney Volk, in his capacity as attorney for Plaintiff, submitted an Information Disclosure Statement (IDS of November 29, 2017) to the USPTO. *See* Exhibit 30.

297.    A true and accurate copy of the IDS of November 29, 2017 is attached as Exhibit 30.

298.   In the IDS of November 29, 2017, Volk cited eighty-four (84) U.S. Patents, forty-four (44) U.S. patent application publications, twenty-nine (29) foreign patent documents, and twenty-seven (27) non-patent literature documents —thereby citing one-hundred and eighty-four (184) references to the Examiner. *See* Exhibit 30.

299.   With the IDS of November 29, 2017, Volk provided no explanation of why any of the references were being cited or their relevance to the '017 application. *See* Exhibit 30.  In addition, the contents of any reference relative to Freedom LP3 were buried among the one-hundred and eighty-four (184)

references cited in the IDS without explanation.

300.   Because Plaintiff identified the '017 application as a continuation-in–part of the '837 application, the earliest possible claimed priority date for new subject matter in the '017 application is June 21, 2010, the date on which the '497 application (which issued as the '140 patent) was filed.   As such, at a minimum, MTI's 2009 Virtual Store Tour Video and Freedom LP3 were prior art to at least any new subject matter in the '017 application that is not disclosed in the '837 application.

301.   In the IDS of November 29, 2017, attorney Volk cited at least three links to YouTube videos that were entitled "Installing LP3 Old Version;"  "MTI LP3 Product Mounting;" and "Virtual Tour of MTI Retail Innovation Center in 2009" *See* Exhibit 30, Non-Patent Literature Documents, Cites Nos. 11, 12, and 21.

302.   However, for each such cite in the IDS of November 29, 2017, Volk also indicated to the Examiner that such were not published until after the earliest possible priority date of June 21, 2010 for new subject matter. *See* Exhibit 30, IDS of November 29, 2017, Non-Patent Literature Documents, Cites Nos. 11, 12, and 21.

303.   Attorney Volk also cited a SlideShare Presentation entitled "Freedom Lp3 4.17.09." *See* Exhibit 30, IDS of November 29, 2017, Non-Patent Literature

Documents, Cite 27. However, Volk indicated to the Examiner that such was not published until July 28, 2009, which is less than one year before the earliest claimed priority date of June 21, 2010 for new subject matter in the '017 application. *Id*.

304. In particular, the IDS submitted by Attorney Volk represented that the video entitled "Virtual Tour of MTI Retail Innovation Center in 2009" was not published until August 2, 2010. *Id*.

305. This representation was false because, as admitted by Plaintiff and judicially decreed in the First Vanguard Litigation, as agreed to in the Confidential Settlement Agreement signed by CEO Michael J. Cook, and as adopted and represented as true by Allison, such video was available by at least May 8, 2009, which is more than one year before the earliest claimed priority date of June 21, 2010 for new subject matter in the '017 application (the date on which the '944 application was filed).

306. Attorney Volk knew that in the Vanguard Litigations, Plaintiff made statements and submissions that were material to the patentability of the '017 application.

307. For example, in the IDS of November 29, 2017, attorney Volk cited the "Declaration of Mike Cook." *See* Exhibit 30, Non-Patent Literature Documents, Cite No. 2. This was a declaration Plaintiff submitted to the District

96

Court for Oregon in the Second Vanguard Litigation on October 20, 2010. *See* Case 3:10-cv-00392-BR (D. Or.), ECF No. 33.

308.  However, the Declaration of Mike Cook as cited in the IDS of November 29, 2017, does not reference Freedom LP3 and does not disclose the information material to patentability that attorney Kaser and named-inventors Allison and Goldberg failed to disclose to the USPTO during prosecution of the '944 application (which issued as the '617 patent), the '107 application (which issued as the '618 patent), and the '497 application (which issued as the '140 patent). *See supra* at ¶¶ 76-272.

309.  In the IDS of November 29, 2017, attorney Volk also cited Exhibit 1005 to the Declaration of Mike Cook. *See* Exhibit 30, IDS of November 29, 2017, Non-Patent Literature Documents, Cite No. 9.

310.  However, Exhibit 1005 as cited in the IDS of November 29, 2017, does not disclose the information material to patentability that attorney Kaser and named-inventor Allison failed to disclose to the USPTO during prosecution of the '944 application (which issued as the '617 patent), the '107 application (which issued as the '618 patent), and the '497 application (which issued as the '140 patent). *See supra* at ¶¶ 76-272.

311.  In the IDS of November 29, 2017, attorney Volk also cited multiple declarations of Thaine Allison obtained by Volk from other adversarial

proceedings involving Plaintiff. *See* Exhibit 30, IDS of November 29, 2017, Non-

Patent Literature Documents, Cites No. 3, 4.

312.    However, despite knowing about the Vanguard Litigations, despite

citing to the Vanguard Litigations and to declarations of Thaine Allison, at no time

on or before March 7, 2018 did attorney Volk disclose any of the following from

the Vanguard litigations to the USPTO:

(a) the Final Judgment by Consent and Permanent Injunction (Case

3:07-cv-01405-BR (D. Or.), ECF No. 346) (the Final Judgement by Consent)

entered in the First Vanguard Litigation indicating, *inter alia*, Freedom LP3 and

MTI's 2009 Virtual Store Video were available as of May 8, 2009 (Exhibit 7);

(b)  the Confidential Settlement Agreement signed by Michael J.

Cook as part of the settlement of the First Vanguard Litigation agreeing that

Freedom LP3 and MTI's 2009 Virtual Store Video were available as of May 8,

2009 (Exhibit 8); and

(c) the Declaration of Thaine Allison of October 20, 2010 adopting

and representing as true that Freedom LP3 was publicly available as of at least

May 11, 2009 (Exhibit 11).

313.    Although aware that such information was material to the

patentability of the subject matter disclosed and claimed in the '017 application as

originally filed, during prosecution of the '017 application, at no time on or before

March 7, 2018 did attorney Volk ever disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that the Freedom LP3 was publicly available as of May 8, 2009; or that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

314.    As the patent attorney who also prosecuted the '017 application which eventually issued as the '281 patent, attorney Volk had a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information known to Volk to be material to patentability of the '017 application.

315.    This duty of candor and good faith required Volk to disclose to the USPTO at least the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that Freedom LP3 was publicly available as of May 8, 2009; and that MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009.

316.    On information and belief, attorney Volk, either alone or in conjunction with others, deliberately decided not to disclose to the USPTO the Final Judgment by Consent; the Declaration of Thaine Allison of October 20, 2010; the Confidential Settlement Agreement; that Freedom LP3 was publicly available as of May 8, 2009; and/or that MTI's 2009 Virtual Store Tour Video was

99

publicly available as of May 8, 2009.

317. On December 13, 2017, InVue filed an Answer and Counterclaim to Plaintiff's Complaint in 2:17-cv-07491, which was pending in the Central District of California. *See* ECF No. 27 in 2:17-cv-074910. Therein, InVue set forth, among other things, allegations of inequitable conduct by attorneys Volk and Kaser and named inventor Allison. Volk is an attorney with the law firm of Thomson Coburn LLP, the same law firm that is representing Plaintiff in this action

318. Upon information and belief, by March 7, 2018, attorney Volk and Plaintiff's attorneys became aware of InVue's Answer and Counterclaim filed in the Central District of California in response to Plaintiff's Complaint in this action (prior to transfer) and the allegations of inequitable conduct therein.

319. On March 7, 2018, the USPTO issued an Office Action for the '017 application. *See* Exhibit 31 (the Office Action of March 7, 2018). A true and accurate copy of the Office Action of March 7, 2018 is attached hereto as Exhibit 31.

320. In the Office Action of March 7, 2018, the Examiner indicated that all pending claims 1-30 of the '017 were allowable and provided the following statement of reasons for allowance:

Regarding claims 1, 27, and 29, patentability resides in "wherein the base assembly contact 54 and the puck assembly contact 56 are adapted to lose contact with each other in response to movement of the puck assembly from the rest position to the lift position to thereby break the electrical connection", in combination with the other limitations of the claim.

*See* Exhibit 31, p. 6.

321.   At the time of the Office Action of March 7, 2018, the claims prosecuted as claims 1-8 of the '017 application are antecedent to issued claims 1-8 of the '281 patent, respectively.  The claims prosecuted as claims 10-11 of the '017 application are antecedent to claims 9-10 of the '281 patent, respectively.  The claims prosecuted as claims 25-29 of the '017 application are antecedent to claims 11-15 of the '281 patent, respectively.  The claims prosecuted as claims 31-45 of the '017 application are antecedent to claims 16-30 of the '281 patent, respectively.

322.   Freedom LP3 was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided. *See* Exhibit 31, p. 6; *see also* Exhibit 7, paragraph 7.b.

323.   MTI's 2009 Virtual Store Tour Video was publicly available as of May 8, 2009 and disclosed one or more of the features in which the Examiner concluded patentability resided. *See* Exhibit 31, p. 6; *see also* Exhibit 7, paragraph 7.b.

324.   In the Office Action of March 7, 2018, the Examiner also directed Plaintiff to update the status of the '944 application (issued as the '617 patent), the

'606 application, the '845 application, and the '497 application (issued as the '140 patent).

325.   Following the Office Action of March 7, 2018, the '017 application would have proceeded to issue without any amendments to the claims, specification, priority claim, and/or inventorship but for InVue's filing of its Answer and Counterclaim to Plaintiff's Complaint in the Central District of California in this action (prior to transfer).

326.   However, now aware of InVue's Answer and Counterclaim to Plaintiff's Complaint in this action and knowing that the withheld information on Freedom LP3 and/or MTI's 2009 Virtual Store Tour Video disclosed one or more features in which the Examiner concluded patentability of claims 1-30 resided as set forth in the Office Action of March 7, 2018, attorney Volk and, upon information and belief, other employees or agents of Plaintiff acting in concert therewith, devised a plan to try and sanitize the '017 application from Plaintiff's prior acts and omissions, including inequitable conduct, and to try and avoid fully disclosing and explaining to the Examiner the withheld material information concerning Freedom LP3 and MTI's 2009 Virtual Store Tour Video.

327.   More particularly, acting in his capacity as attorney for Plaintiff, Volk filed with the USPTO an amendment and response to the '017 application on April 20, 2018. *See* Exhibit 32 (Amendment of April 20, 2018).

328.   A true and accurate copy of the Amendment of April 20, 2018 is attached hereto as Exhibit 32.

329.   In the Amendment of April 20, 2018, Plaintiff's priority claim for the '017 application was amended to remove priority claims to all earlier applications where Plaintiff and its agents withheld material information regarding Freedom LP3 and MTI's 2009 Virtual Store Tour Video as alleged by InVue's Answer and Counterclaim in this action and as set forth above with regard to each of the '944 application (issued as the '617 patent), the '606 application, the '845 application, and the '497 application (issued as the '140 patent). *See* Exhibit 32.

330.   The amended priority claim, with highlights to the applications in which Plaintiff materially failed in its duty of candor and good faith to the USPTO, is shown below:

**Cross-Reference and Priority Claim to Related Patent Application[[s]]:**

~~This patent application is a continuation of U.S. patent application serial no. 15/679,620, filed August 17, 2017 and entitled "Display for Hand-Held Electronics", where the 15/679,620 application is a continuation of U.S. patent application serial no. 15/221,497, filed July 27, 2016 and entitled "Display for Hand Held Electronics", where the 15/221,497 application is a continuation of U.S. patent application serial no. 14/092,845, filed November 27, 2013 and entitled "Display for Hand Held Electronics", where the 14/092,845 application (1) claims priority to provisional U.S. patent application serial no. 61/730,450, filed November 27, 2012 and entitled "Retail Merchandise Display with Swappable Retractor", (2) claims priority to provisional U.S. patent application serial no. 61/730,454, filed November 27, 2012 and entitled "Display Fixture for Retail Merchandise", (3) claims priority to provisional U.S. patent application serial no. 61/732,064, filed November 30, 2012 and entitled "VHB Cure Tool", and (4) is a continuation-in-part of U.S. patent application serial no. 14/066,606, filed October 29, 2013 and entitled "Display for Hand Held Electronics", and where the 14/066,606 application (1) claims priority to provisional U.S. patent application serial no. 61/720,344, filed October 30, 2012 and entitled "Retail Merchandise Display", and (2) is a continuation-in-part of U.S. patent application serial no. 12/819,944, filed June 21, 2010 and entitled "Display for Hand-Held Electronics".~~

This patent application is ~~also~~ a continuation-in-part of U.S. patent application serial no. 12/351,837, filed January 10, 2009 and entitled "Display for Hand-Held Electronics".

*See* Exhibit 32 at p. 2.

331. Additionally, rather than fully explaining to the Examiner the significance and scope of the withheld information concerning Freedom LP3 and MTI's 2009 Virtual Store Tour Video, Volk amended the pending claims and purported to remove subject matter not disclosed in U.S. Patent Application 12/351,837, an application filed on January 10, 2009, which was the earliest filed

104

application to which the '017 application claimed priority. *See* Exhibit 32 at pp. 3-11, 14-26.

332. Volk also asserted that with the amendments, all pending claims in the '017 application were entitled to priority date of January 10, 2009, the filing date of U.S. Patent Application 12/351,837. *See* Exhibit 32 at p. 14.

333. In the amendment of April 20, 2018, Volk briefly referenced this action, including the allegations of inequitable conduct, and noted that another Information Disclosure Statement was being filed with the Amendment to cite items from that litigation. *See* Exhibit 32 at pp. 13-14. However, Volk led the Examiner away from the materiality of such information by simultaneously asserting that any such information material to patentability concerning the Freedom LP3 that was previously withheld by Kaser, Volk, Allison, and Goldberg was no longer relevant because "the products and videos that were identified in Defendant's allegations as being publicly available on May 8, 2009 do not qualify as prior art against the pending claims." *See* Exhibit 32 at p. 14.

334. Attorney Volk did not inform the Examiner that Freedom LP3 disclosed the very features in which the Examiner found patentability as indicated in the Office Action of March 7, 2018. Nor did Volk inform the Examiner that these same or similar features, fully disclosed by the Freedom LP3, were at least part of the basis for Examiner Nguyen's finding of patentability in each of the '617

105

patent, '618 patent, and the '140 patent.

335.    In addition, Volk's statement to the Examiner was false because the '017 application for the '281 patent claims subject matter not disclosed in the '837 application and, therefore, the withheld information concerning the Freedom LP3 and MTI's 2009 Virtual Store Tour Video (as set forth above) remained material prior art to the '017 application that was not disclosed.

336.    In an effort to further sanitize the '017 application, Volk also amended the '017 application to remove Allison and Goldberg as inventors—although Plaintiff fully relied upon each as being inventors when the '017 application was originally filed.

337.    Following the breach of the duty of candor and good faith in dealing with the USPTO by attorney Volk as described herein above, the USPTO issued the '281 patent on July 17, 2018, and Plaintiff filed its Complaint in this action alleging infringement of the '281 patent on the same day.

338.    The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.  Plaintiff has not cured this unconscionable conduct.

## Plaintiff's Deceptive Petition for Revival of the '837 Application
## Ninety-One Months After Abandonment

339.    On January 10, 2009, attorney Kaser, in his capacity as attorney for

Plaintiff, caused U.S. Application No. 12/351,837 ("'837 application") to be filed

with the USPTO.  As set forth above, the '281 patent-in-suit includes a priority

claim to the '837 application—the same priority claim Volk used during

prosecution of the '281 patent-in-suit to argue that "products and videos identified

in [InVue's] allegations as being publicly available on May 8, 2009 do not qualify

as prior art against the pending claims." *See* Exhibit 32 at p. 14 and *supra* at ¶ 333.

340.    Along with filing the original '837 application, attorney Kaser also

filed an Application Data Sheet identifying his correspondence address as "355

NW Gilman Blvd. Suite 203, Issaquah, WA 98027" (the "355 NW Gilman Blvd.

address"). *See* Exhibit 33.  A true and accurate copy of the Application Data Sheet

is attached as Exhibit 33.

341.    In filing the '837 application, Kaser did not file certain parts of the

application that are required by USPTO regulations.

342.    Accordingly, less than one month later, on February 3, 2009, the

USPTO mailed a Notice to File Missing Parts to the 355 NW Gilman Blvd. address

provided by Kaser.  Exhibit 34.  This was the USPTO's first communication to

Kaser regarding the '837 application and, based on Kaser's profession as a

registered patent attorney, a communication Kaser would know the USPTO would

issue. A true and accurate copy of the Notice to File Missing Parts is attached as Exhibit 34.

343. The Notice to File Missing Parts identified the '837 application's non-compliance with USPTO regulations and provided Plaintiff with two months to file the required parts or else the '837 application would be abandoned. *See id.*

344. Kaser, acting in his capacity as attorney for Plaintiff, failed to respond to the Notice to File Missing Parts within the prescribed period.

345. Thereafter, on October 9, 2009 (nine months after Kaser's filing of the application), the USPTO mailed a Notice of Abandonment of the '837 application to the 355 NW Gilman Blvd. address Kaser had provided. *See* Exhibit 35. A true and accurate copy of the Notice of Abandonment is attached as Exhibit 35.

346. The Notice of Abandonment described the basis for the abandonment as the "failure to timely or properly reply to the Notice to File Missing Parts (Notice) mailed on 02/03/2009." *Id.*

347. Kaser and Plaintiff failed to respond to the Notice of Abandonment for over seven years.

348. During this over seven year period of abandonment by Plaintiff, InVue initiated a series of litigations against Plaintiff for patent infringement beginning with a Complaint against Plaintiff filed on December 15, 2015 in the Western District of North Carolina (later transferred to the District of Oregon).

Plaintiff also initiated multiple *inter partes* reviews in the USPTO as well as a suit in the U.S. District Court for the Southern District of Indiana. The following table identifies some of the current litigations/contested matters between the parties:

| Current Litigation / Contested Matters |
| --- |
| *InVue Security Products, Inc. v. Mobile Tech, Inc. d/b/a Mobile Technologies Inc. d/b/a MTI, formerly known as Merchandising Technologies, Inc.*, Case No. 3:17-cv-01356 (D. Or.) |
| *Mobile Tech, Inc. d/b/a Mobile Technologies Inc. and MTI v. InVue Security Products Inc.*, Case No. 3:18-cv-00052 (W.D.N.C.) |
| *Mobile Tech, Inc. d/b/a Mobile Technologies Inc. and MTI v. InVue Security Products Inc.*, Case No. 3:18-cv-5050-RJC-DSC (W.D.N.C) |
| *InVue Security Products, Inc. v. Mobile Tech, Inc. d/b/a Mobile Technologies Inc. and MTI, formerly known as Merchandising Technologies, Inc.*, Case No. 1:18-cv-2653 (S.D. Ind.) |
| IPR2016-00892, -00895, -00896, -00898, -00899  (*inter partes* reviews) |
| IPR2017-00344, -00345, -01900, -01901 (*inter partes* reviews) |
| PGR2018-00004 (post grant review) |
| IPR2018-00481, -01138(*inter partes* reviews) |

349.   Plaintiff retained the law firm of Thompson Coburn LLP at least as early as February 1, 2016 to represent Plaintiff in the original action in the Western District of North Carolina, as well as all of the remaining actions and proceedings that have been filed between the parties.

350.   Some seventeen months after the series of litigations between the parties commenced, on May 19, 2017, Plaintiff revoked Kaser's power of attorney to prosecute the '837 application and changed to attorney Benjamin Volk of the law firm of Thompson Coburn LLP. *See* Exhibit 36. Thereafter, all submissions in

109

the prosecution of the '837 application were made by attorney Volk of the Thompson Coburn law firm. A true and accurate copy of the May 26, 2017 Notice of Acceptance of Power of Attorney is attached as Exhibit 36.

351. One month later, on July 17, 2017, attorney Volk filed a "Petition for Revival of an Application of a Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(b)" ("Petition") seeking to revive the abandoned '837 application. *See* Exhibit 37. The Petition was accompanied by a representation to the USPTO that the delay in prosecuting the '837 application was unintentional. *Id*. A true and accurate copy of the Petition is attached as Exhibit 37.

352. Along with the Petition, attorney Volk also filed a declaration signed by attorney Kaser purporting to "explain the circumstances surrounding this unintentional abandonment to the best of my knowledge." *See* Exhibit 38 at 1 ("the Kaser Declaration"). A true and accurate copy of the Kaser Declaration is attached as Exhibit 38.

353. In the Kaser Declaration, Kaser acknowledged that, in preparing the original '837 application, he populated the "Correspondence Information" field of the Application Data Sheet with "my (then) business address of 355 NW Gilman Blvd. Suite 203, Issaquah, WA 98207." *Id*. at 2.

354. Attorney Kaser further testified that "because I included my business street address in the Correspondence Information field of the ADS, this indicates to

110

me that the USPTO would have mailed any notices about this patent application to me at the business street address (355 NW Gilman Blvd. Suite 203, Issaquah, WAS 98027)." *Id*.

355. Attorney Kaser then concluded that "I changed my address around this time, and I believe the presence of my old address as the correspondence address in the ADS was another contributing cause to the unintentional abandonment of this application." *Id*.

356. After noting that the Notice to File Missing Parts which led to the abandonment was indeed mailed to him at the 355 NW Gilman Blvd. address, attorney Kaser asserted: "On information and belief, I did not receive this Notice to File Missing Parts. Around this time I recall that I was working in connection with multiple office locations and new staff and also experiencing mail difficulties at this NW Gilman Blvd. address, which ultimately led me during 2009 to change my business address from 355 NW Gilman Blvd., Suite 203, Issaquah, WA 98207 to PO Box 1305, Issaquah, WA 98207. I believe these factors might explain why I did not receive the Notice to File Missing Parts." *Id*. Attorney Kaser provided substantially the same explanation for his failure to respond to the Notice of Abandonment. *Id.*

357. Unsurprisingly, Kaser provided no information regarding how, after over 7 years of abandonment, he suddenly became aware of the abandoned '837

111

application at a time when Plaintiff and InVue were embroiled in multiple litigations as set forth in the table above.

358.   Regardless, Attorney Kaser's testimony, presented by Attorney Volk to the USPTO to revive the abandoned '837 application, was deceptively false and misleading because Attorney Kaser continued to use the 355 NW Gilman Blvd. address long after the USPTO mailed to Kaser the Notice to File Missing Parts and the Notice of Abandonment—and long after the time that he purportedly changed his address as set forth in his testimony.

359.   Specifically, Attorney Kaser's declaration conceals the fact that, long after his claimed change of address, he continued to use the 355 NW Gilman Blvd. address and continued to represent to both U.S. District Courts and the USPTO that his business address was 355 NW Gilman Blvd. Suite 203, Issaquah, WA 98027.

360.   As one of multiple examples, attorney Kaser assumed responsibility for trademark Application No. 74584388 in November 2009—seven months after the time Kaser testified he changed his address — by filing an Appointment of Attorney with the USPTO. Exhibit 39.  In doing so, attorney Kaser represented his address at that time as 355 NW Gilman Blvd., Ste. 203, Issaquah, WA 98027. *Id*. A true and accurate copy of the Appointment of Attorney is attached as Exhibit 39.

361.   As another example, on April 8, 2011— eighteen months after the time Kaser testified he changed his address— attorney Kaser filed a new complaint

112

in the Western District of Washington in which he represented his address as 355 NW Gilman Blvd., Ste. 203, Issaquah, WA 98027. Exhibit 40 at 1. A true and accurate copy of the complaint in *Baden Sports, Inc. v. Wilson Sporting Goods Co.*, Case No. 2:11-cv-603 (W.D. Wash. 2011) is attached as Exhibit 40.

362. Attorney Kaser also responded to mail sent to him at the 355 NW Gilman Blvd. address well after the time he testified that he changed his address. For example, on September 28, 2010, during the prosecution of trademark Application No. 76595748, the USPTO mailed a Post Registration Office Action to attorney Kaser at 355 NW Gilman Blvd., Ste. 203, Issaquah, WA 98027. Exhibit 41. A true and accurate copy of the Office Action is attached as Exhibit 41. On January 6, 2011, attorney Kaser responded to this office action, indicating his receipt of the mailing. *See* Exhibit 42. A true and accurate copy of the Response to Office Action is attached as Exhibit 42.

363. Further, attorney Kaser's claim of ongoing mail problems at the Gilman Blvd. address is inconsistent with his filing of the '837 application, in which he identified 355 Gilman Blvd, Suite 203 as his address, less than one month prior to the USPTO's mailing of the Notice to File Missing Parts, which he claims, on information and belief, to never have received due at least in part to the "mail problems."

364. Attorney Kaser knew that his declaration would be filed with the

USPTO in support of a petition to revive the abandoned '837 application.

365. Attorney Kaser had a duty of candor and good faith in dealing with the USPTO, which included a duty not to present the USPTO with a declaration containing deceptively false and misleading statements. By virtue of the terms of the sworn declaration itself, Attorney Kaser further owed a duty to provide truthful statements in the Kaser Declaration and to not conceal information about his continued use of the 355 Gilman Blvd. address. *See* Exhibit 38 at p. 4. Attorney Kaser breached his duty of candor and good faith and his duty under the sworn declaration in signing the Kaser Declaration that was presented to the USPTO.

366. Attorney Volk filed the Kaser Declaration with the USPTO, along with the petition to revive '837 application. Also accompanying these documents, attorney Volk filed a transmittal letter, stating "that the entire delay in filing the required reply from the due date for the reply until the filing of this petition pursuant to the 37 C.F.R. 1.137 was unintentional." Exhibit 37.

367. Upon information and belief, Attorney Volk either knew of the deceptively false and misleading representations presented in the Kaser Declaration or should have known, had he conducted a reasonable investigation.

368. Plaintiff did not cure the breach of the duty of candor and good faith in prosecuting the '837 application.

369. On information and belief, attorney Kaser, either alone or in

114

conjunction with others, deliberately decided to present the deceptively false and misleading statements in the Kaser Declaration in an effort to revive the abandoned '837 application.

370.   Plaintiff relied on the deceptively false and misleading representations in the Kaser Declaration to enable the revival of the abandoned '837 application. Because of this revival, the '837 application's status was changed from abandoned to pending.  Absent the deceptively false and misleading representations in the Kaser Declaration, the '837 application would have remained abandoned.  In such case, the '837 application i) could not have been relied upon by Plaintiff for a priority claim in filing the '017 application that issued as the '281 patent-in-suit and ii) could not have been relied upon by Volk to argue, on behalf of Plaintiff, that "products and videos identified in [InVue's] allegations as being publicly available on May 8, 2009 do not qualify as prior art against the pending claims." *See* Exhibit 32 at p. 14 and *supra* at ¶ 333.

371.   Absent revival of the '837 application and the accompanying pending status of that application, Plaintiff could not have amended the priority claim of the '017 application so as to rely solely upon the '837 application and remove references to the applications for which InVue has alleged that Plaintiff withheld material information from the USPTO and committed inequitable conduct (i.e. the '944 application (which issued as the '617 patent), the '606 application (referenced

115

above), the '845 application (referenced above), the '497 application (which issued as the '140 patent)).

372.   Absent revival of the '837 application, the Freedom LP3 references withheld from the USPTO during the prosecution of the prior applications (*see supra* at ¶¶ 76-272) would also have been considered material prior art to the '017 application.  Indeed, Plaintiff's website virtually marks the Freedom LP3 with the '281 patent thereby admitting that one or more claims read on the Freedom LP3.

373.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '281 patent but for the deceptively false and misleading representations in the Kaser Declaration. Had the USPTO been aware that the representations were deceptively false and misleading, the USPTO would not have revived the '837 application, the '281 patent could not have claimed priority to the '837 application, and the '281 patent would not have issued.

374.   The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '837 application is that attorney Kaser acted with intent to deceive in presenting the materially and deceptively false and misleading statements in the Kaser Declaration to the USPTO.

375.   The above-described acts and omissions of Attorney Kaser in connection with the '837 application constitutes inequitable conduct.

116

376.   The above-described acts and omissions bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court, and Plaintiff comes to this Court with unclean hands.  Plaintiff has not cured this unconscionable conduct.

**Plaintiff's Trademark Infringement and Misleading Advertising**

377.   The Counterclaims in this action arise, at least in part, out of Plaintiff's infringement of Defendant's registered trademarks and common law trademarks.  Furthermore, the Counterclaims in this action arise, at least in part, out of Plaintiff's deceptive advertising practices whereby Plaintiff has used Defendant's trademarks, service marks and/or business and trade names in Plaintiff's online advertising, including by purchasing Defendant's trademarks as keywords in online search engine marketing campaigns, in order to target, confuse and divert Defendant's customers to Plaintiff with its deceptive and misleading advertising.

378.   These Counterclaims include claims for trademark infringement under Section § 43(a) of the Lanham Act 15 U.S.C. § 1114; Federal Unfair Competition and False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Common Law Trademark Infringement and Unfair Competition (i.e., trademark misappropriation); violation of the North Carolina Unfair Trade Practices Act; and Cancellation of U.S. Trademark Registration Nos. 5,431,402

117

and 5,431,403, pursuant to 15 U.S.C. § 1064.

## Defendant's Asserted Trademarks

379.   InVue or its predecessors have continuously used, advertised, and promoted the trademarks INVUE and INVUE SECURITY PRODUCTS in connection with various products related to the field of electronic security devices for use in retail stores and in connection with other products and services, as further described herein below, since at least as early as November 2007.

380.   InVue or its predecessors have continuously used, advertised, and promoted the trademarks CONNECT and INVUE CONNECT in connection with various products related to the field of electronic security devices for use in retail stores and in connection with other products and services, as further described herein below, since at least as early as August 2015, in a trading area of broad geographical scope encompassing the United States.

381.   Since long prior to any use of the INVUE trademark by Plaintiff, any use of the designation CONNECT by Plaintiff or any use of the designation MTI CONNECT by Plaintiff, InVue and/or its predecessors in interest have used, advertised, and promoted the trademarks INVUE and INVUE SECURITY PRODUCTS and promoted the marks CONNECT and INVUE CONNECT as trademarks, service marks, and/or have analogous usage in a trademark or service mark sense or alternatively in a trade name sense, or use analogous to trademark,

118

service mark or trade name usage, in commerce and/or in interstate commerce, in connection with various products related to the field of electronic security devices for use in retail stores and in connection with other products and/or services.

382.   InVue is the owner of all rights, title, and interest in trademarks that include the formative words INVUE, INVUE SECURITY PRODUCTS and INVUE CONNECT.

383.   InVue is the owner of all rights, title, and interest in U.S. Trademark Registration Number 3,710,228 for the trademark INVUE for use with "Electronic security devices for use in retail stores, namely, [garment alarms,] line alarms, free standing alarm modules, alarm module stands, and cabinet alarms," as shown in Exhibit 43, which is incorporated herein in its entirety.

384.   InVue is the owner of all rights, title, and interest in U.S. Trademark Registration Number 3,762,731 for the trademark INVUE SECURITY PRODUCTS for use with "security fixtures for use in retail stores, namely, primarily metal display hooks," as shown in Exhibit 44, which is incorporated herein in its entirety.

385.   InVue is the owner of all rights, title, and interest in U.S. Trademark Registration Number 3,763,008 for the trademark INVUE for use with "security fixtures for use in retail stores, namely, primarily metal display hooks," as shown in Exhibit 45, which is incorporated herein in its entirety.

386.   InVue is the owner of all rights, title, and interest in U.S. Trademark

Registration Number 4,063,146 for the stylized trademark **InVue** for use

with "electronic security devices for use in retail stores, namely, alarming displays,

line alarms, free standing alarm modules, alarm module stands and cabinet alarms,

and sensors for said devices," as shown in Exhibit 46, which is incorporated herein

in its entirety.

387.   InVue is the owner of all rights, title, and interest in U.S. Trademark

Registration Number 4,076,549 for the stylized trademark **InVue** for use

with "security fixtures for use in retail stores, namely, primarily metal display

hooks," as shown in Exhibit 47, which is incorporated herein in its entirety.

388.   InVue is the owner of all rights, title, and interest in U.S. Trademark

Registration Number 5,540,238 for the trademark INVUE for use with

"Downloadable software for retail security for collecting data about employee

access to security devices, auditing employee access to security devices, and

controlling zones that are accessible by employees, and for managing, collecting,

and analyzing retail pricing and marketing data and data from consumer electronic

products and security devices for said consumer electronic products" and

"Software as a service (SAAS) services featuring software for collecting data about

employee access to security devices, auditing employee access to security devices,

and controlling zones that are accessible by employees, and for managing, collecting, and analyzing retail pricing and marketing data and data from consumer electronic products and security devices for said consumer electronic products; providing online non-downloadable software for retail security, namely, for collecting data about employee access to security devices, auditing employee access to security devices, and controlling zones that are accessible by employees; providing online non-downloadable software for managing, collecting, and analyzing retail pricing and marketing data and data from consumer electronic products and security devices for said consumer electronic products" as shown in Exhibit 48, which is incorporated herein in its entirety.

389. InVue is the owner of all rights, title, and interest in the common law trademarks CONNECT and INVUE CONNECT for use with, at least, goods and services including: (a) Software as a service (SAAS) services featuring software for providing information about retail security devices, including, customer support, employee education and training, product instructions, and product purchasing; and (b) providing online non-downloadable software for accessing information about retail security devices, including, customer support, employee education and training, product instructions, and product purchasing, as shown in Exhibit 49, which is incorporated herein in its entirety.

390. The marks INVUE, INVUE SECURITY PRODUCTS, CONNECT

121

and INVUE CONNECT are hereinafter referred to collectively as the Asserted InVue Trademarks.

391.   The Asserted InVue Trademarks are inherently distinctive.

392.   InVue has continuously used the Asserted InVue Trademarks by prominently displaying them on advertising for InVue's products and services.

393.   The Asserted InVue Trademarks identify quality goods and services, are recognized by the consuming public, and generate significant goodwill that inures to InVue.

394.   The federal trademark registrations referenced above are valid and subsisting, in full force and effect, and constitute prima facie and conclusive evidence of InVue's exclusive right to use the marks in commerce in connection with the goods specified in the registrations.

**Plaintiff's Misleading Advertising**

395.   For some or all of the time period since May of 2018 to the present, Plaintiff used one or more of Defendant's Asserted InVue Trademarks and/or business and trade names in Plaintiff's online advertising, by purchasing one or more of Defendant's Asserted InVue Trademarks as keywords in online search engine marketing campaigns in order to target, confuse and divert Defendant's customers to Plaintiff with said deceptive and misleading advertising.

396.   For instance, Plaintiff operates and sells products through a division

and/or subsidiary known as ArmorActive.

397. Plaintiff advertises on the internet, including on one of its websites, which is linked to the domain name www.armoractive.com.

398. To promote its products and business, Plaintiff modified its internet advertising practices to target InVue and InVue's customers by knowingly and intentionally trading on Defendant's Asserted InVue Trademarks by unlawfully using one or more of the Asserted InVue Trademarks as keywords in Plaintiff's internet advertising, including purchasing one or more of the Asserted InVue Trademarks as keywords in online search engine marketing campaigns, so that Plaintiff's advertising is prominently featured whenever a consumer inputs one or more of the Asserted InVue Trademarks into search engine websites.

399. For example, a search on www.google.com using Defendant's INVUE trademark results in the prominent display of Plaintiff's www.armoractive.com website as shown below:

123



400. As a result of Plaintiff's intentional manipulation of internet search results by purchasing one or more Defendant's Asserted InVue Trademarks as keywords in online search engine marketing campaigns, consumers are likely to believe and/or be confused that the domain name www.armoreactive.com is associated with InVue and/or is likely to confuse and divert InVue's customers to Plaintiff and away from InVue and its website.

401. Plaintiff intentionally purchased one or more Defendant's Asserted InVue Trademarks as keywords on search engine websites as part of an internet advertising scheme targeting InVue and deceptively attempting to confuse InVue's customers or potential customers to view Plaintiff's website and purchase

124

Plaintiff's products.

402.   Plaintiff's actions, including purchasing, and using one or more Defendant's Asserted InVue Trademarks as keywords on search engine websites, were clearly designed to drive traffic away from Defendant's website and to Plaintiff's website for Plaintiff's commercial gain.

403.   Plaintiff's use of one or more of Defendant's Asserted InVue Trademarks as keywords in advertisements has forced Defendant to bid to have its own advertisements appear when Defendant's own trademarks are searched.

404.   At no time did Plaintiff have permission to use or to license the Asserted InVue Trademarks as keywords in advertisements.

405.   Plaintiff's unlawful purchase and use of the Asserted InVue Trademarks on the internet to deceptively redirect consumers to one or more of Defendant's websites, is likely to cause, and upon information and belief is causing, confusion among consumers.

406.   Defendant has been damaged and irreparably harmed as a result of Plaintiff's improper use of one or more Defendant's Asserted InVue Trademarks.

## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment of Unenforceability of the '617 Patent Due To Inequitable Conduct)**

407.   InVue realleges and incorporates by reference Paragraphs 1 through 272 of these Counterclaims as though fully set forth herein.

408.   The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '944 application is that Attorney Kaser and named-inventors Allison and Goldberg acted with intent to deceive in failing to disclose to the Examiner and USPTO information that was material to patentability.

409.   Attorney Kaser and named-inventors Allison and Goldberg each breached their duty of good faith and candor in prosecuting the '944 application.

410.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '617 patent but for the failure of Attorney Kaser to disclose all information known to be material to the patentability of the subject matter claimed in the '944 application and the '617 patent.  Had the USPTO been aware of the material information that Attorney Kaser failed to disclose, the USTPO would not have issued the '617 patent.

411.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '617 patent but for the failure of named-inventor Allison to disclose all information known to be material to the patentability of the subject matter claimed in the '944 application and the '617 patent.  Had the USPTO been aware of the material information that Allison failed to disclose, the USTPO would not have issued the '617 patent.

412.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not

126

have issued the '617 patent but for the failure of named-inventor Goldberg to disclose all information known to be material to the patentability of the subject matter claimed in the '944 application and the '617 patent. Had the USPTO been aware of the material information that Goldberg failed to disclose, the USTPO would not have issued the '617 patent.

413. Neither Attorney Kaser nor named-inventors Allison and Goldberg cured their breach of the duty of good faith and candor in prosecuting the '944 application.

414. For at least these reasons, InVue is entitled to a judicial declaration that the '617 patent is unenforceable under the doctrine of inequitable conduct and is entitled to a finding that this action is an exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment of Unenforceability of the '618 Patent Due To Inequitable Conduct)

415. InVue realleges and incorporates by reference Paragraphs 1 through 272 of these Counterclaims as though fully set forth herein.

416. The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '107 application is that Attorney Kaser and named-inventors Allison and Goldberg acted with intent to deceive in failing to disclose to the Examiner and USPTO information that was

material to patentability.

417. Attorney Kaser and named-inventors Allison and Goldberg each breached their duty of good faith and candor in prosecuting the '107 application.

418. Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '618 patent but for the failure of Attorney Kaser to disclose all information known to be material to the patentability of the subject matter claimed in the '107 application and the '618 patent. Had the USPTO been aware of the material information that Attorney Kaser failed to disclose, the USTPO would not have issued the '618 patent.

419. Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '618 patent but for the failure of named-inventor Allison to disclose all information known to be material to the patentability of the subject matter claimed in the '107 application and the '618 patent. Had the USPTO been aware of the material information that Allison failed to disclose, the USTPO would not have issued the '618 patent.

420. Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '618 patent but for the failure of named-inventor Goldberg to disclose all information known to be material to the patentability of the subject matter claimed in the '107 application and the '618 patent. Had the USPTO been aware of the material information that Goldberg failed to disclose, the USTPO

128

would not have issued the '618 patent.

421.   Neither Attorney Kaser nor named-inventors Allison and Goldberg cured their breach of the duty of good faith and candor in prosecuting the '107 application.

422.   For at least these reasons, InVue is entitled to a judicial declaration that the '618 patent is unenforceable under the doctrine of inequitable conduct and is entitled to a finding that this action is an exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## THIRD CLAIM FOR RELIEF
**(Declaratory Judgment of Unenforceability of the '140 Patent Due To Inequitable Conduct)**

423.   InVue realleges and incorporates by reference Paragraphs 1 through 272 of these Counterclaims as though fully set forth herein.

424.   The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '497 application is that Attorney Kaser, Attorney Volk, and named-inventors Allison and Goldberg acted with intent to deceive in failing to disclose to the Examiner and USPTO information that was material to patentability.

425.   The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '497 application is that Attorney Volk acted with intent to deceive in making a false statement to the

Examiner and USPTO regarding publication date of the video entitled "Virtual Tour of MTI Retail Innovation Center in 2009."

426.  Attorney Kaser, Attorney Volk, and named-inventors Allison and Goldberg each breached their duty of good faith and candor in prosecuting the '497 application.

427.  Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '140 patent but for the failure of Attorney Kaser to disclose all information known to be material to the patentability of the subject matter claimed in the '497 application and the '140 patent. Had the USPTO been aware of the material information that Attorney Kaser failed to disclose, the USTPO would not have issued the '140 patent.

428.  Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '140 patent but for the failure of Attorney Volk to disclose all information known to be material to the patentability of the subject matter claimed in the '497 application and the '140 patent. Had the USPTO been aware of the material information that Attorney Volk failed to disclose, the USTPO would not have issued the '140 patent.

429.  Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '140 patent but for the false statement of Attorney Volk. Had the USPTO been aware such statement was false, the USTPO would not have issued

the '140 patent.

430.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '140 patent but for the failure of named-inventor Allison to disclose all information known to be material to the patentability of the subject matter claimed in the '140 patent.  Had the USPTO been aware of the material information that Allison failed to disclose, the USTPO would not have issued the '140 patent.

431.   Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '140 patent but for the failure of named-inventor Goldberg to disclose all information known to be material to the patentability of the subject matter claimed in the '140 patent.  Had the USPTO been aware of the material information that Goldberg failed to disclose, the USTPO would not have issued the '140 patent.

432.   Neither Attorney Kaser nor named-inventors Allison and Goldberg cured the breach of their duty of good faith and candor in prosecuting the '497 application.

433.   Attorney Volk also did not cure the breach of the duty of good faith and candor by Kaser and named-inventors Allison and Goldberg in prosecuting the '497 application.

434.   Attorney Volk did not cure the breach of his duty of good faith and

131

candor in prosecuting the '497 application

435.    For at least these reasons, InVue is entitled to a judicial declaration that the '140 patent is unenforceable under the doctrine of inequitable conduct and is entitled to a finding that this action is an exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment of Unenforceability '618 Patent – Infectious Unenforceability)

436.    InVue realleges and incorporates by reference Paragraphs 1 through 272 and 407 through 414 of these Counterclaims as though fully set forth herein.

437.    The '944 application that issued as the '617 patent is antecedent to the '107 application that issued as the '618 patent.

438.    The above-described acts and omissions during prosecution of the '944 application constitute inequitable conduct and bear an immediate and necessary relation to Plaintiff's claims, the '618 patent, and the unenforceability of the '618 patent.

439.    Plaintiff has not cured any of the above-described acts and omissions.

440.    The '618 patent is unenforceable the doctrine of infectious unenforceability and Plaintiff comes before this Court with unclean hands.

441.    For these reasons, InVue is entitled to a judicial declaration that the '618 patent is unenforceable, and is entitled to a finding that this action is an

132

exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## FIFTH CLAIM FOR RELIEF
**(Declaratory Judgment of Unenforceability '140 Patent – Infectious Unenforceability)**

442.    InVue realleges and incorporates by reference Paragraphs 1 through 271 and 407 through 422 of these Counterclaims as though fully set forth herein.

443.    The '944 application that issued as the '617 patent is antecedent to the '497 application that issued as the '140 patent.

444.    The above-described acts and omissions during prosecution of the '944 application constitute inequitable conduct and bear an immediate and necessary relation to Plaintiff's claims, the '140 patent, and the unenforceability of the '140 patent.

445.    The '107 application that issued as the '618 patent is antecedent to the '497 application that issued as the '140 patent.

446.    The above-described acts and omissions during prosecution of the '107 application constitute inequitable conduct and bear an immediate and necessary relation to Plaintiff's claims, the '140 patent, and the unenforceability of the '140 patent.

447.    The breach of the duty of candor and good faith by Attorney Kaser during prosecution of the '606 application and the '845 application bear an

133

immediate and necessary relation to the '140 patent and the unenforceability of the '140 patent.

448. Plaintiff has not cured any of the above-described acts and omissions.

449. The '140 patent is unenforceable the doctrine of infectious unenforceability and Plaintiff comes before this Court with unclean hands.

450. For these reasons, InVue is entitled to a judicial declaration that the '140 patent is unenforceable, and is entitled to a finding that this action is an exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment of Unenforceability of the '281 Patent Due to Inequitable Conduct)

451. InVue realleges and incorporates by reference all preceding paragraphs 1 through 376 of these Counterclaims as through fully set forth herein.

452. The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '017 application for the '281 patent-in-suit is that Attorney Volk acted with intent to deceive in failing to disclose to the Examiner and USPTO information that was material to patentability.

453. The single most reasonable inference that can be drawn from the facts and circumstances surrounding the prosecution of the '017 application for the '281

134

patent-in-suit is that Attorney Volk acted with intent to deceive in making a false statement to the Examiner and USPTO regarding publication date of the video entitled "Virtual Tour of MTI Retail Innovation Center in 2009."

454.    Attorney Volk breached the duty of good faith and candor in prosecuting the '017 application for the '281 patent-in-suit.

455.    Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '281 patent but for the failure of Attorney Volk to disclose all information known to be material to the patentability of the subject matter claimed in the '017 application and the '281 patent.  Had the USPTO been aware of the material information that Attorney Volk failed to disclose, the USTPO would not have issued the '281 patent.

456.    Based on at least 35 U.S.C. §§ 102 and/or 103, the USPTO would not have issued the '281 patent but for the false statement of Attorney Volk.  Had the USPTO been aware such statement was false, the USPTO would not have issued the '281 patent.

457.    Neither Plaintiff nor Attorney Volk cured any breach of the duty of good faith and candor in prosecuting the '017 application.

458.    For at least these reasons, InVue is entitled to a judicial declaration that the '281 patent is unenforceable under the doctrine of inequitable conduct and is entitled to a finding that this action is an exceptional matter entitling InVue to an

award of attorneys' fees pursuant to 35 U.S.C. § 285.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment of Unenforceability of the '281 Patent Due to Infectious Unenforceability)

459.   InVue realleges and incorporates by reference all preceding paragraphs 1 through 376 and 451 through 458 of these Counterclaims as through fully set forth herein.

460.   The '944 application that issued as the '617 patent is antecedent to the '017 application that issued as the '281 patent-in-suit.

461.   The above-described acts and omissions during prosecution of the '944 application bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court.

462.   The '107 application that issued as the '618 patent is antecedent to the '017 application that issued as the '281 patent-in-suit.

463.   The above-described acts and omissions during prosecution of the '107 application bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court.

464.   The '606 application is antecedent to the '017 application that issued as the '281 patent-in-suit.

465.   The above-described acts and omissions during prosecution of the '606 application bear an immediate and necessary relation to the relief Plaintiff

now seeks before the Court.

466. The '845 application is antecedent to the '017 application that issued as the '281 patent-in-suit.

467. The above-described acts and omissions during prosecution of the '845 application bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court.

468. The '497 application that issued as the '140 patent is antecedent to the '017 application that issued as the '281 patent-in-suit.

469. The above-described acts and omissions during prosecution of the '497 application bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court.

470. The '837 application is antecedent to the '017 application that issued as the '281 patent-in-suit.

471. The above-described acts and omissions during prosecution of the '837 application constitute an affirmative act of egregious misconduct and bear an immediate and necessary relation to the relief Plaintiff now seeks before the Court.

472. Plaintiff has not cured any of the above-described acts and omissions.

473. The '281 patent is not entitled to claim priority to the '837 application.

474. The '281 patent is unenforceable under the doctrine of infectious

137

unenforceability and Plaintiff comes before this Court with unclean hands.

475. For these reasons, InVue is entitled to a judicial declaration that the '281 patent is unenforceable, and is entitled to a finding that this action is an exceptional matter entitling InVue to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Judgment of Patent Non-Infringement of the '140 Patent)

476. InVue realleges and incorporates by reference Paragraph 1 of its Additional Defenses and Paragraphs 1 through 22 of its Counterclaim as though fully set forth herein.

477. MTI has alleged in its Complaint a claim that InVue has infringed the '140 patent. InVue denies that it has infringed or is infringing any valid claim of the '140 patent. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to the '140 patent.

478. InVue has not infringed and does not infringe, either directly or indirectly, any valid claim of the '140 patent.

479. InVue seeks a declaration from this Court that InVue has not directly or indirectly infringed, and does not directly or indirectly infringe, any valid claim of the '140 Patent.

138

## NINTH CLAIM FOR RELIEF
### (Declaratory Judgment of Patent Non-Infringement of the '281 Patent)

480.   InVue realleges and incorporates by reference Paragraph 2 of its Additional Defenses and Paragraphs 1 through 22 of its Counterclaims as though fully set forth herein.

481.   MTI has alleged in its Complaint that InVue has infringed the '281 patent. InVue denies that it has infringed or is infringing any valid claim of the '281 patent. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to the '281 patent.

482.   InVue has not infringed and does not infringe, either directly or indirectly, any valid claim of the '281 patent.

483.   InVue seeks a declaration from this Court that InVue has not directly or indirectly infringed, and does not directly or indirectly infringe, any valid claim of the '281 Patent.

## TENTH CLAIM FOR RELIEF
### (Declaratory Judgment of Patent Invalidity of the '140 Patent)

484.   InVue realleges and incorporates by reference Paragraph 3 of its Additional Defenses and Paragraphs 1 through 22 of its Counterclaim as though fully set forth herein.

485.   MTI has alleged in its Complaint a claim that InVue has infringed the '140 patent. InVue denies that it has infringed or is infringing any valid claim of

the '140 patent. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to the '140 patent.

486. The '140 patent is invalid for failure to satisfy one or more of the requirements of patentability under the patent laws, including without limitation 35 U.S.C. §§ 102, 103, and/or 112.

487. InVue seeks a declaration from this Court that the '140 patent is invalid.

## ELEVENTH CLAIM FOR RELIEF
**(Declaratory Judgment of Patent Invalidity of the '281 Patent)**

488. InVue realleges and incorporates by reference Paragraph 4 of its Additional Defenses and Paragraphs 1 through 22 of its Counterclaim as though fully set forth herein.

489. MTI has alleged in its Complaint a claim that InVue has infringed the '281 patent. InVue denies that it has infringed or is infringing any valid claim of the '281 patent. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to the '281 patent.

490. The '281 patent is invalid for failure to satisfy one or more of the requirements of patentability under the patent laws, including without limitation 35 U.S.C. §§ 102, 103, and/or 112.

491. InVue seeks a declaration from this Court that the '281 patent contained new subject matter that is not entitled to claim priority to U.S.

140

Application No. 12/351,837.

492.   InVue seeks a declaration from this Court that the '281 patent is invalid.

## TWELFTH CLAIM FOR RELIEF
### (Declaratory Judgment of Federal Unfair Competition)

493.   InVue incorporates by reference the preceding allegations as if repeated here verbatim.

494.   Plaintiff has asserted a claim of federal unfair competition against InVue at the Eighth Claim for Relief of the Complaint. Plaintiff claims that InVue's marketing video entitled "InVue Security – Cost of Ownership" is literally false or at least misleading. InVue denies that its video is false or misleading as asserted by Plaintiff. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to claims of federal unfair competition.

495.   InVue seeks a declaration from this Court that InVue's video is not false, nor is it misleading, and does not constitute the asserted unfair competition.

## THIRTEENTH CLAIM FOR RELIEF
### (Federal and Common Law Trademark Infringement - 15 U.S.C. § 1114 – INVUE AND INVUE SECURITY PRODUCTS TRADEMARKS)

496.   InVue incorporates by reference the preceding allegations as if repeated here verbatim.

497.   InVue has priority of use in all respects for its Asserted InVue Trademarks relative to Plaintiff's use of the INVUE AND INVUE SECURITY

PRODUCTS trademarks as used in conjunction with various products related to the field of electronic security devices for use in retail stores, in connection with Plaintiff's internet advertising scheme and in connection with other products and services or other goods that are identical or substantially similar InVue's goods and services.

498.    InVue's trademarks are inherently distinctive and have acquired distinctiveness through the long, continuous, and exclusive use of these trademarks so that consumers associate the INVUE and INVUE SECURITY PRODUCTS trademarks with a single source.

499.    InVue and/or its predecessors have generated significant revenue through the sale of products bearing the INVUE and INVUE SECURITY PRODUCTS trademarks to consumers throughout the United States.

500.    InVue and its predecessors have made substantial investment in advertising, marketing, and promoting InVue's goods and services under the INVUE and INVUE SECURITY PRODUCTS trademarks.

501.    InVue has sold and offered for sale goods, including various products related to the field of electronic security devices for use in retail stores, bearing the INVUE and INVUE SECURITY PRODUCTS trademarks in a trading area of broad geographical scope encompassing the United States.

502.    The INVUE and INVUE SECURITY PRODUCTS trademarks are

symbolic of the extensive goodwill and consumer recognition that InVue has established through substantial expenditures of time, effort and other resources in the advertising and promotion of the goods InVue sells and offers for sale under the INVUE and INVUE SECURITY PRODUCTS trademarks and the services offered under these trademarks.

503.   Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks by intentionally manipulating internet search results by purchasing one or more Defendant's Asserted InVue Trademarks as keywords in online search engine marketing campaigns, constitutes infringement of one or more of the INVUE and INVUE SECURITY PRODUCTS trademarks in violation of 15 U.S.C. Section 1114 and the common law.

504.   Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks by intentionally manipulating internet search results has been with knowledge of the Asserted InVue Trademarks.

505.   InVue has been damaged as a direct and proximate result of Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks through the intentional manipulation of internet search results.

506.   InVue will continue to be damaged as a direct and proximate result of Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks in connection with goods and services associated with the Asserted

InVue Trademarks unless and until Plaintiff is enjoined from further depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks, including through the intentional manipulation of internet search results in connection with goods and services associated with the Asserted InVue Trademarks.

## FOURTEENTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement –
### INVUE CONNECT and CONNECT Trademarks)

507.   InVue incorporates by reference the preceding allegations as if repeated here verbatim.

508.   InVue has priority of use in all respects for its CONNECT and INVUE CONNECT trademarks (referred to herein collectively as the "INVUE CONNECT trademarks") relative to Plaintiff's designations "MTI CONNECT" and "CONNECT" as used in conjunction with products and services that are identical or substantially similar to InVue's goods and services sold or offered under the INVUE CONNECT trademarks.

509.   Plaintiff is and continues to use, advertise, and promote products or services related to the field of electronic security devices for use in retail stores under the name or designations MTI CONNECT and CONNECT in the same or in overlapping locations  throughout the United States, including North Carolina, where InVue has priority of use for its INVUE CONNECT trademarks.

510.   Plaintiff's depiction of MTI CONNECT and/or CONNECT in

144

connection with goods and services associated with InVue's INVUE CONNECT trademarks is likely to cause confusion or mistake among consumers as to the source or origin of the goods and services.

511.   Plaintiff's depiction of MTI CONNECT and/or CONNECT in connection with goods and services associated with InVue's INVUE CONNECT trademarks is likely to cause confusion or mistake among consumers as to an affiliation between InVue's products and Plaintiff's goods and services.

512.   Plaintiff's MTI CONNECT and CONNECT designations are confusingly similar in sound, appearance, connotation, and overall commercial impression to InVue's INVUE CONNECT trademarks.  For instance, a side-by-side comparison of examples of Plaintiff's use of the MTI CONNECT and CONNECT designations and some of InVue's INVUE CONNECT trademarks as used in commerce are provided below:

## MTI'S USE OF CONNECT

## USE OF INVUE CONNECT TRADEMARKS















513.   Plaintiff's use of the MTI CONNECT and CONNECT designations in connection with goods and services associated with InVue's INVUE CONNECT trademarks and in the same or in overlapping locations in the United States, where InVue has priority of use for its INVUE CONNECT trademarks constitutes common law trademark infringement.

514.   InVue has been damaged as a direct and proximate result of Plaintiff's depiction of the MTI CONNECT and CONNECT designations in connection with goods and services associated with the INVUE CONNECT trademarks in the same or in overlapping locations in the United States.

515.   InVue will continue to be damaged as a direct and proximate result of Plaintiff's depiction of the MTI CONNECT and CONNECT designations in connection with goods and services associated with the INVUE CONNECT trademarks unless and until Plaintiff is enjoined from further depiction of the designations MTI CONNECT and CONNECT in connection with goods and services associated with the INVUE CONNECT trademarks.

**FIFTEENTH CLAIM FOR RELIEF**
**(False Designation of Origin - 15 U.S.C. § 1125(a))**

516.   InVue incorporates by reference the preceding allegations as if repeated here verbatim.

517.   Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks by intentionally manipulating internet search results and

147

Plaintiff's depiction of MTI CONNECT and/or CONNECT in connection with goods and services associated with the Asserted InVue Trademarks constitutes a false designation of origin in violation of 15 U.S.C. Section 1125(a).

518.    Plaintiff's depiction of the INVUE and INVUE SECURITY PRODUCTS trademarks by intentionally manipulating internet search results and Plaintiff's depiction of MTI CONNECT and/or CONNECT in connection with goods and services associated with the Asserted InVue Trademarks has been intentional and with knowledge of the Asserted InVue Trademarks.

519.    InVue has been damaged as a direct and proximate result of Plaintiff's false designation of origin associated with the Asserted InVue Trademarks.

520.    InVue will continue to be damaged as a direct and proximate result of Plaintiff's false designation of origin associated with the Asserted InVue Trademarks unless and until Plaintiff is enjoined from further depiction of the Asserted InVue Trademarks, the CONNECT designation and the MTI CONNECT designation in connection with goods and services associated with the Asserted InVue Trademarks.

## SIXTEENTH CLAIM FOR RELIEF
### (Unfair Trade Practices - N.C. Stat. § 75-1.1, *et seq.*)

521.    InVue incorporates by reference the preceding allegations as if repeated here verbatim.

522.    Plaintiff's infringement and false designation of origin associated with

148

the Asserted InVue Trademarks intentionally deceive the public as to an affiliation between Plaintiff and InVue, mislead InVue's customers or potential customers to view Plaintiff's website and purchase Plaintiff's products, and drive traffic away from Defendant's website and to Plaintiff's website for Plaintiff's commercial gain.

523.   Plaintiff's infringement and false designation of origin associated with the Asserted InVue Trademarks are continuing torts, repeated every day, that directly affect the public interest by intentionally confusing members of the public as to an affiliation between Plaintiff and InVue.

524.   Plaintiff's infringement and false designation of origin associated with the Asserted InVue Trademarks constitute an unfair trade practice in violation of N.C. Stat. § 75-1.1, et seq.

525.   Plaintiff's depiction of the Asserted InVue Trademarks, the CONNECT designation and the MTI CONNECT designation in connection with goods and services associated with the Asserted InVue Trademarks has directly and proximately damaged InVue by, inter alia, by diverting customers from InVue to Plaintiff, diverting revenue from InVue, and confusing members of the public as to an affiliation between Plaintiff and InVue.

526.   InVue has been damaged as a direct and proximate result of Plaintiff's unfair trade practices associated with the Asserted InVue Trademarks.

527. InVue will continue to be damaged as a direct and proximate result of Plaintiff's unfair trade practices associated with the Asserted InVue Trademarks unless and until Plaintiff is enjoined from further depiction of the CONNECT designation, the MTI CONNECT designation and further depiction of the Asserted InVue Trademarks.

## SEVENTEENTH CLAIM FOR RELIEF
### (Declaratory Judgment of California Business and Professions Code §§ 17200 *et seq.* and 17500)

528. InVue incorporates by reference the preceding allegations as if repeated here verbatim.

529. Plaintiff has asserted a claim for unfair trade practices and unfair competition under California Business and Professions Code § 17200 et seq., and False Advertising under California Business and Professions Code § 17500 against InVue in the Eleventh Claim for Relief of the Complaint. InVue denies that it has engaged in unfair trade practices and unfair competition. Thus, an actual, immediate, real, and justiciable controversy now exists between InVue and MTI with respect to the alleged unfair trade practices and unfair competition.

530. InVue seeks a declaration from this Court that InVue has not engaged unfair trade practices and unfair competition.

## EIGHTEENTH CLAIM FOR RELIEF
### (Cancellation of U.S. Trademark Registration Nos.: 5,431,402 and 5,431,403 - 15 U.S.C. § 1064)

531. InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

532. Plaintiff is the owner of U.S. Trademark Registration No. 5,431,402 (the " '402 Registration") for the designation MTI CONNECT, for the following goods: In International Class 009 - Display mounts with anti-theft sensors and alarms for use in loss prevention and merchandising of consumer electronics products; computer hardware and software for use in security and anti-theft sensors and alarms for products sold in retail stores; computer software for use in providing and reporting business intelligence, inventory management, merchandising data and compliance, anti-theft sensors and alarm device monitoring, anti-theft sensors and alarm device statistical data, anti-theft sensors and alarm device data analytics, and the authentication of anti-theft sensors and alarm devices; In International Class 035.- Collection, analysis, and reporting of business data pertaining to installed system health, authentication, performance analytics, alarm functioning, security controls, and authentication, all for business purposes; providing business intelligence services; providing business information about inventory management; providing business merchandising information; In International Class 042 - Computer software platform as a service (PaaS) featuring

151

computer software for use in providing and reporting business intelligence, inventory management, merchandising data and compliance, anti-theft sensors and alarm device monitoring, anti-theft sensors and alarm device statistical data, anti-theft sensors and alarm device data analytics, and the authentication of anti-theft sensors and alarm devices; data automation and collection service using software to evaluate, analyze and collect service data; computer security services in the nature of providing authentication, issuance, validation and revocation of digital certificates for use in protecting data and information from unauthorized access; and in International Class 045 - Analysis of surveillance and anti-theft sensors and alarm device statistical data for fraud and theft prevention purposes; as shown in Exhibit 50, which is incorporated herein in its entirety.

533.    The '402 Registration issued on March 27, 2018.

534.    During the prosecution of the application that resulted in the '402 Registration, Plaintiff confirmed that its first and earliest use of the designation MTI CONNECT was on November 30, 2016.

535.    Plaintiff is the owner of U.S. Trademark Registration No. 5,431,403 (the " '403 Registration") for the designation CONNECT, for the following goods: In International Class 009 - Display mounts with anti-theft sensors and alarms for use in loss prevention and merchandising of consumer electronics products; computer hardware and software for use in security and anti-theft sensors and

152

alarms for products sold in retail stores; computer software for use in providing and reporting business intelligence, inventory management, merchandising data and compliance, anti-theft sensors and alarm device monitoring, anti-theft sensors and alarm device statistical data, anti-theft sensors and alarm device data analytics, and the authentication of anti-theft sensors and alarm devices; In International Class 035.- Collection, analysis, and reporting of business data pertaining to installed system health, authentication, performance analytics, alarm functioning, security controls, and authentication, all for business purposes; providing business intelligence services; providing business information about inventory management; providing business merchandising information; In International Class 042 - Computer software platform as a service (PaaS) featuring computer software for use in providing and reporting business intelligence, inventory management, merchandising data and compliance, anti-theft sensors and alarm device monitoring, anti-theft sensors and alarm device statistical data, anti-theft sensors and alarm device data analytics, and the authentication of anti-theft sensors and alarm devices; data automation and collection service using software to evaluate, analyze and collect service data; computer security services in the nature of providing authentication, issuance, validation and revocation of digital certificates for use in protecting data and information from unauthorized access; and In International Class 045 - Analysis of surveillance and anti-theft sensors and alarm

153

device statistical data for fraud and theft prevention purposes; as shown in Exhibit 51, which is incorporated herein in its entirety.

536. The '403 Registration issued on March 27, 2018.

537. During the prosecution of the application that resulted in the '403 Registration, Plaintiff confirmed that its first and earliest use of the designation CONNECT was on November 30, 2016.

538. InVue has priority of use in all respects for its Asserted InVue Trademarks, including INVUE CONNECT, relative to Plaintiff's CONNECT and MTI CONNECT designations as used in conjunction with various products, including , at least, goods and services including: (a) Software as a service (SAAS) services featuring software for providing information about retail security devices, including, customer support, employee education and training, product instructions, and product purchasing; and (b) providing online non-downloadable software for accessing information about retail security devices, including, customer support, employee education and training, product instructions, and product purchasing;" and other goods and/or services that are identical or substantially similar to the goods and services upon which Plaintiff is utilizing the MTI CONNECT designation.

539. Upon information and belief, Plaintiff began using the CONNECT and MTI CONNECT designations with knowledge of and to intentionally mimic

InVue's use of its INVUE CONNECT trademarks in order to target, confuse and divert InVue's customers with deceptive and misleading trademark usage and advertising.

540.   Plaintiff's depiction of MTI CONNECT and/or CONNECT in connection with goods and services associated with the INVUE CONNECT trademarks is likely to cause confusion or mistake among consumers as to the source or origin of goods and services offered under these marks.

541.   Plaintiff's depiction of MTI CONNECT and/or CONNECT in connection with goods and services associated with the INVUE CONNECT trademarks is likely to cause confusion or mistake among consumers as to an affiliation between Plaintiff's products or services and InVue's goods and services sold or offered under the INVUE CONNECT trademarks.

542.   Plaintiff's MTI CONNECT designation and CONNECT designation are confusingly similar in sound, appearance, connotation, and overall commercial impression to InVue's INVUE CONNECT trademarks.

543.   Plaintiff's MTI CONNECT designation and CONNECT designation so resemble the Asserted InVue Trademarks that continued registration and use of the MTI CONNECT designation and CONNECT designation will cause or is likely to cause consumer confusion and mislead consumers away from associating the INVUE CONNECT trademarks with a single source, namely InVue.  Such

155

consumer confusion will cause damage and injury to InVue and its goodwill in its Asserted InVue Trademarks.

544. Plaintiff's use of the MTI CONNECT designation and CONNECT designation is likely to cause confusion in the minds of consumers between Plaintiff and the Defendant, thereby lessening the value of the Asserted InVue Trademarks, as unique identifiers of InVue's products and services.

545. InVue has been damaged as a direct and proximate result of Plaintiff's depiction of the designation MTI CONNECT and the designation CONNECT in connection with goods and services associated with the Asserted InVue Trademarks, and specifically the INVUE CONNECT trademarks.

546. For these reasons, the '402 Registration and '403 Registration must be cancelled pursuant to 15 U.S.C. §1064.

<u>**REQUEST FOR RELIEF**</u>

Wherefore, having fully answered all of Plaintiff's allegations and asserted appropriate additional defenses, InVue respectfully requests the entry of judgment against Plaintiff, providing the following relief:

(A) finding that Plaintiff comes before the Court with unclean hands;

(B) adjudging that Plaintiff take nothing by reasons of its Complaint;

(C) dismissing the Complaint with prejudice and denying each request for relief made by Plaintiff;

(D) entering judgment that InVue does not infringe the '140 patent under 35 U.S.C. § 271;

(E) entering judgment that the '140 patent is invalid;

(F) declaring that the '140, '617, and '618 patents are unenforceable due to inequitable conduct;

(G) declaring that the '140 and '618 patents are unenforceable due to infectious unenforceability;

(H) finding that this case is exceptional, that InVue is the prevailing party, and awarding InVue reasonable attorney fees;

(I) finding that the priority claim of the '281 to patent U.S. Application No. 12/351,837 should be stricken or disallowed because U.S. Application No. 12/351,837 was improperly revived and/or Plaintiff comes to this Court with unclean hands;

(J) finding that the '281 includes new subject matter relative to U.S. Application No. 12/351,837, which is not entitled to the priority claim thereto;

(K) entering judgment that InVue does not infringe the '281 patent under 35 U.S.C. § 271;

(L) declaring that the '281 patent is unenforceable due to inequitable conduct;

157

(M)    declaring that the '281 patent is unenforceable due to infectious unenforceability;

(N)    entering judgment that MTI's use of the designations "MTI CONNECT" and "CONNECT" for products in the field of electronic security devices infringes InVue's trademarks under federal common law and cancelling the Trademark Registration Nos. 5,431,402 and 5,431,403 associated with those terms;

(O)    entering judgment that MTI has violated 15 U.S.C. § 1125(a) by using InVue's trademarks to falsely designate the origin of its products;

(P)    entering judgment that MTI committed unfair trade practices under N.C. Gen. Stat. § 75-1.1 by falsely designating the origin of its products through the use of the "CONNECT" and "MTI CONNECT" designations;

(Q)    adjudging that InVue be awarded it attorneys' fees and costs;

(R)    awarding such other and further relief as this Court deems just and proper.

158

## JURY DEMAND

InVue demands a trial by jury on all issues triable to a jury.

December 18, 2018

Respectfully submitted,

s/Tim F. Williams

Tim F. Williams (Fed. Id. 6276)
DORITY & MANNING, P.A.
P.O. Box 1449
Greenville, S.C. 29602-1449
Tel: 864-271-1592
Fax: 864-233-7342
timw@dority-manning.com

s/ J. Mark Wilson

J. Mark Wilson (N.C. Bar No. 25763)
MOORE & VAN ALLEN, PLLC
100 North Tryon Street, St. 4700
Charlotte, N.C. 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
markwilson@mvalaw.com

159

## CERTIFICATE OF SERVICE

I certify that on December 18, 2018, I electronically filed Defendant InVue

Security Products Inc.'s **ANSWER AND COUNTERCLAIM TO THE FIRST**

**AMENDED COMPLAINT** to be served on all counsel of record by means of the

Court's Notice of Electronic Filing.

Respectfully submitted,

s/Tim F. Williams
Tim. F. Williams
Jason A. Pittman
Dority & Manning, P.A.
P.O. Box 1449
Greenville, SC 29602-1449
(864) 271-1592
(864) 233-7342 (facsimile)
tim@dority-manning.com
jpittman@dority-manning.com