# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00052-RJC-DSC

| | |
|---|---|
| **MOBILE TECH INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>)<br>**v.** )<br>)<br>**INVUE SECURITY PRODUCTS INC.,** )<br>)<br>**Defendant.** ) | <br><br><br><br>**MEMORANDUM AND**<br>**RECOMMENDATION** |

**THIS MATTER** is before the Court on "Mobile Tech Inc.'s Motion to Dismiss Counts 13 through 16 and 18 of Invue Security Product Inc.'s Counterclaims," Doc. 72, and the parties' associated briefs and exhibits, Docs. 73, 75 and 76.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Mobile Tech's Motion to Dismiss be denied, as discussed below.

## I. BACKGROUND

This action brings patent infringement, trademark infringement and unfair competition claims and counterclaims involving device display technologies for consumer electronics. For purposes of this Motion, InVue has pled counterclaims alleging federal and common law infringement of the INVUE trademark (Counterclaim 13), common law infringement of the CONNECT and INVUE CONNECT trademarks (Counterclaim 14), false designation of origin

under 15 U.S.C. § 1125(a) (Counterclaim 15), Unfair and Deceptive Trade Practices in violation of North Carolina General Statutes §75-1.1, et seq. (Counterclaim 16), and trademark cancellation under 15 U.S.C. § 1064 (Counterclaim 18).

Mobile Tech ("MTI") argues that these counterclaims should be dismissed pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. These counterclaims are directed at an internet advertisement placed by MTI. MTI asserts that the purchasing of advertising keywords alone does not constitute trademark infringement or unfair competition. MTI also argues that this internet ad does not visibly incorporate or display any of InVue's trademarks to consumers. Finally, MTI argues that Counterclaims 14, 15, 16 and 18 should be dismissed because InVue has not pled that the term "CONNECT" acts as a source identifier for InVue.

InVue alleges a scheme whereby MTI purchased one or more of its trademarks as search engine keywords and used them in a deceptive online marketing campaign to lure away potential customers and cause confusion. InVue argues that these facts plausibly state their counterclaims for trademark infringement and unfair competition. InVue also argues that the Motion raises allegations that are beyond the proper scope of a Rule 12(b)(6) Motion.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

InVue asserts counterclaims for trademark infringement and false designation of origin under the Lanham Act (15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a)(1)), trademark infringement under North Carolina common law, unfair trade practices in violation of North Carolina General Statue § 75-1.1, et seq., and trademark cancellation under 15 U.S.C. § 1064.

To establish a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114(1), a plaintiff must show both (1) "that it owns a valid and protectable mark," and (2) "that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (citations omitted). To state a false designation of origin claim, 15 U.S.C. § 1125(a), a plaintiff must sufficiently allege that:

> (1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts.

Superior Performers, Inc. v. Family First Life, LLC, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (quoting America Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444, 449 (E.D.Va.1998)). The test for a false designation of origin is "essentially the same as the test for trademark infringement." JFJ Toys, Inc. v. Sears Holdings Corp., 237 F. Supp. 3d 311, 327 (D. Md. 2017).

Courts have applied essentially the same likelihood of confusion standard to claims for common law trademark infringement or unfair competition (regarding trademarks) under North Carolina law. See Georgia Pac. Consumer Prods. v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010) ("[T]he parties do not dispute that, under the facts of this case ... the tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved."); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); Passport Health, LLC v. Avance Health System, Inc., 2018 WL 6620914, at *6 (E.D.N.C. Dec. 18, 2018) (citations omitted) ("The tests for North Carolina common law unfair competition and unfair and deceptive trade practices in the context of trademark are similar to that for trademark infringement"); Superior Performers, Inc. v. Family First Life, LLC, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (citing Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 422 (4th Cir.1998) ("'Likelihood of confusion' is the basic test of both common-law trademark infringement and federal statutory trademark infringement.")).

In determining whether there is a likelihood of confusion, the Fourth Circuit considers nine factors: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods and

services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." Variety Stores, Inc., 888 F.3d at 660 (citations omitted). See also Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012) (citation omitted).

Likelihood of confusion is an inherently factual issue. Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 155 (4th Cir. 2014). It is not appropriate to weigh the relevant factors at the motion to dismiss stage. Superior Performers, Inc., 2014 WL 7338923, at *5 (citing U.S. Hosiery Corp. v. The Gap, Inc., 707 F.Supp. 800, 810 (W.D.N.C.1989)).

MTI argues that InVue's Counterclaims 13, 14 and 16 must be dismissed since "there is no likelihood of confusion because 'what the customer saw on the screen' in an online MTI Ad (1) did not include InVue's trademark and (2) was identified as an advertisement." Doc. 73 at 6. MTI also moves for dismissal of Counterclaims 14, 16 and 18 related to InVue's common law CONNECT and INVUE CONNECT trademarks. MTI contends InVue has failed to allege that CONNECT and INVUE CONNECT operate as source identifiers.

InVue has pled that:

1) InVue's trademarks are inherently distinctive (See Doc. 69 at ¶¶ 391, 498);

2) MTI's products and services are identical or substantially similar to the types of goods and services sold by InVue under the INVUE trademarks (Id. at ¶ 497);

3) MTI purchased and used InVue's trademarks as keywords in online search engine marketing campaigns as part of a scheme to intentionally manipulate internet results and thereby target and confuse InVue's customers (Id. at ¶¶ 395-405 and 503-504); and

4) such deceptive advertising resulted in confusion among consumers. (Id. at ¶¶ 395, 400 and 405).

InVue's allegations detail ownership of the CONNECT and INVUE CONNECT trademarks which has been acquired through its use of those trademarks in commerce. See Doc. 69 at ¶¶ 380-381, 392-393. InVue also alleges that it has priority of use over MTI with respect to the CONNECT and INVUE CONNECT trademarks or any colorable imitations thereof, such as the MTI CONNECT designations. Id.

The Court finds that the labeling and appearance of the advertisements are only one of the issues to consider in a likelihood of confusion analysis. InVue's counterclaims are not solely based upon MTI's purchase of its trademarks as search engine keywords. It also alleges MTI's modification of its advertising practices as part of an intentional scheme to target InVue and its customers, cause consumer confusion and divert customers away from InVue through deceptive advertising.

InVue's factual allegations must be accepted as true for purposes of the instant Motion to Dismiss. These factual allegations sufficiently plead InVue's counterclaims for federal and common law trademark infringement and unfair and deceptive trade practices. Accordingly, the undersigned respectfully recommends that MTI's Motion to Dismiss Invue's counterclaims be denied.

## IV. **RECOMMENDATION**

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that the "Mobile Tech Inc.'s Motion to Dismiss Counts 13 through 16 and 18 of InVue Security Product Inc.'s Counterclaims," Doc. 72, be DENIED.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: June 21, 2019

David S. Cayer
United States Magistrate Judge